# Exhibit 1

DocuSign Envelope ID: CC5C7AAD-7731-4539-A40E-20A6576AADBE

Ptr # 3955

# BDO PARTNER/PRINCIPAL EMPLOYMENT AGREEMENT

As part of BDO USA, LLP's conversion from a partnership to a professional corporation, effective July 1, 2023, you will be transitioning from a Partner of BDO USA, LLP to an employee of BDO USA, P.A. (the "Company"). Set forth below are the terms of your employment with the Company.

1. **Position:** You will be employed as a Partner in the same function and with the same job responsibilities you had at BDO USA, LLP as of June 30, 2023, as well as any duties or roles assigned to you from time to time by the Company's Board of Directors (and/or its designee(s)). You will be working out of the Nashville office. You will be expected to devote your full time and attention to the development of the quality, scope and size of the Company's professional practice, except as may otherwise be approved by the Chief Executive Officer.

2. **Compensation**: You will be paid an annualized salary of $681,500 in accordance with the Company's general payroll practices, which is currently semi-monthly on the 15th and last day of each month. As an exempt employee, your hours in this position may fluctuate, and each weekly portion of your salary will compensate you for all hours you work during a week. You will be eligible for a salary increase and discretionary performance bonus each year as part of the Company's performance management and compensation process. You will also be eligible to participate in the BDO USA, P.A. Non-Qualified Retirement Plan, which has been simultaneously provided to you with this Employment Agreement.

3. **Benefits**. You are eligible to participate in the Company's benefit plans and programs on those same terms and conditions as all other Principals and Partners.

4. **Ethics and Standards**. During your employment, you must conduct yourself in accordance with the recognized ethical standards applicable to certified public accountants, including the standards of the organized certified public accounting profession (the American Institute of Certified Public Accountants and the various state societies) and the standards applicable to certified public accountants entitled to practice before the United States General Accounting Office, Securities and Exchange Commission and Treasury Department. You shall also observe and comply with the professional principles and policies set forth in the Company's written Code of Ethics and Business Conduct, as is updated from time to time. You hereby acknowledge you have online access to a copy of the Code of Ethics and Conduct in effect as of the date you sign this Agreement. You further acknowledge that all of these professional standards and principles are an integral part of this Agreement and shall be applicable to and binding upon you with the same force and effect as if fully set forth at length in this Agreement. You agree to timely file true, complete, and correct federal, state and local personal income tax returns required under applicable laws, rules and regulations, which tax returns shall be complete and accurate in all material respects, and that all such personal income taxes shall be paid by their respective legal due date, unless subject to a payment plan approved by the applicable tax authority.

5. **Background Checks**. As a condition of continued employment, you agree to consent to the Company's' standard background checks for Principals and Partners, including but not limited to credit reports, as requested by the Company from time to time.

6. **Restrictive Covenants**. As a condition of employment, you must execute the Agreement Regarding Competition and Protection of Proprietary Restrictions attached as Exhibit A, which is incorporated into this Employment Agreement as if fully set forth herein.

7. **Termination of Employment**. Your employment with the Company will terminate on (i) your death or permanent mental or physical incapacity (as determined by a physician selected by the Company in its good faith judgment), (ii) your resignation, or (iii) termination by the Company at any time with or without Cause (as defined below). Except as otherwise provided herein you agree to provide at least three (3) months' notice of your resignation and that your resignation will be effective three (3) months following the close of the month in which you provide the Company a written notice of resignation. In the case of your written notice of resignation, the Board of Directors or Chief Executive Officer of the Company

Ptr # 3955

may waive, upon your request or in their sole discretion, any and all of the three (3) month notice period and may, in their sole discretion, make your resignation effective at any time after the Company receives such notice up to the date three (3) months after the last day of the month in which such written notice is received.

      a.    If your employment is terminated by the Company with Cause, or you resign from your employment, you will be paid your base salary through your last day of employment, and any unreimbursed business expenses incurred through your last day of employment that are sufficiently supported by documentation, provided that such expenses are submitted for reimbursement within thirty (30) days following your last day of employment. No other amounts will be owed, except vested retirement benefits or insurance continuation rights expressly required under applicable law (such as the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA")).

      b.    If your employment is terminated without Cause, you will be paid the equivalent of eight (8) weeks' of your base salary then in effect.  In order to be eligible for such payment, you must execute and not revoke a release of all claims in the Company's standard form severance agreement.

      c.    "Cause" shall mean:  (i) your material breach of this Agreement or any covenant under the Agreement Regarding Competition and Protection of Proprietary Restrictions; (ii) your material breach of any written policy of the Company, including but not limited to the Code of Ethics and Business Conduct; (iii) your conduct which, in the determination of the Board of Directors: (a) constitutes a material deviation from the principles, rules or responsibilities set forth in the most recent version of the Code of Professional Conduct, including the by-laws thereof, promulgated by the American Institute of Certified Public Accountant; (b) constitutes competition with the Company; (c) adversely affects the independence, practice or profits of the Company; (d) reflects your personal financial circumstances that would have a negative impact on the Company; or (e) your failure to provide any authorization, approval or consent required to permit the Chief Executive Officer to obtain credit reports or information about your federal, state or local tax filings pursuant to Section 3.6(o) of the BDO USA, P.A. Stockholder Agreement; (iv) your gross negligence or willful misconduct in the performance of your duties, or your failure to make continued, material economic contributions to the Company; (v) your commission of any felony or crime involving moral turpitude; (vi) any theft, fraud or embezzlement by you whether or not such action constitutes a felony; (vii) your willful or prolonged physical absence from your designated office (other than for reason of bona-fide Company business or disability due to physical or mental illness); (viii) your conduct that has caused, or could reasonably be expected to cause, substantial injury, whether monetary or otherwise to the Company, its business or its reputation; (ix) your pursuit of activities that are materially adverse or contrary to the best interests of the Company or its business; or (x) your illegal drug use or use of alcohol to an extent which materially impairs your performance.

    **8.**    **Waiver of Jury Trial**.  EACH PARTY WAIVES ITS RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THEIR EMPLOYMENT RELATIONSHIP IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY PARTY AGAINST THE OTHER PARTY OR ANY AFFILIATE OF SUCH OTHER PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS OR OTHERWISE.  THE PARTIES AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.  WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT. **EACH PARTY ACKNOWLEDGES THAT IT HAS RECEIVED THE ADVICE OF COMPETENT COUNSEL OR HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL.**

Ptr # 3955

IN WITNESS WHEREOF, the Parties hereto have executed this Employment Agreement as of the date first written above.

BDO USA, P.A.

By: _____

Name: Stephen Ferrara, Chief Operating Officer

DocuSigned by:

Vin Phan

274DB6D7207E448...

Phuoc Vin Phan

Ptr # 3955

## EXHIBIT A TO BDO PARTNER/PRINCIPAL EMPLOYMENT AGREEMENT

## AGREEMENT REGARDING COMPETITION AND PROTECTION OF PROPRIETARY INTERESTS

I understand that I will be employed as a Partner by BDO USA, P.A. or one of its subsidiaries or affiliated entities (collectively, the "Company"). For purposes of this Agreement, I understand that references to the Company's confidential information, work product, property, clients, prospective clients, and employees include the confidential information, work product, property, clients, prospective clients, and employees of, BDO USA, LLP, in which I held a partnership interest up until its conversion to BDO USA, P.A. During my employment, I will have access to the Company's confidential information and key business relationships. Moreover, in exchange for signing this Agreement regarding Competition and Protection of Proprietary Interests (the "Agreement"), I will receive employment with the Company, participation in the BDO USA, P.A. Non-Qualified Retirement Plan, and other consideration. I agree, therefore, that the following restrictions are reasonable and necessary to protect the Company's interests I further acknowledge that I have been provided with 14 days to review this Agreement, and the Company has instructed me to consult with an attorney before signing this Agreement.

1. **Protection of Confidential Information**.

    a. **Definition of Confidential Information.** The term "Confidential Information" means information or materials disclosed to, or acquired, developed, originated or discovered, by me during the course or as a result of my employment with the Company (or my prior position as a partner of BDO USA, LLP prior to its conversion into BDO USA, P.A.) about or relating to the Company, its current or former subsidiaries, affiliates or clients, including, without limitation, (i) information or materials concerning the contractual or financial arrangements (including, without limitation, this Agreement) between the Company and any of the Company's employees, directors, officers or stockholders (including, without limitation, me) or any other individual, corporation or other entity with whom the Company does or has done business or any transaction (including, without limitation, clients, customers, vendors, suppliers and independent contractors) and (ii) information or materials relating to the financial condition, operations, business plans, billing practices, marketing strategies or performance of the Company (including, without limitation, any and all financial statements, client lists, billing records, client or customer service plans, general ledgers, and income and other tax returns).

    b. **Nondisclosure and Prohibition against Misuse.** Due to my employment with the Company, and my former position as a partner of BDO USA, LLP prior to its conversion to BDO USA, P.A., I may have acquired or may in the future develop or acquire knowledge of Confidential Information (as defined above). I agree that I shall, at all times during the terms of my employment with the Company and thereafter, keep all Confidential Information in strictest confidence and trust. I shall not disclose any Confidential Information at any time except to authorized Company personnel or as necessary in connection with the business of the Company, its subsidiaries, affiliates or clients, unless (i) the Company, acting through its Chief Executive Officer, consents to such disclosure in advance in writing; (ii) I establish by written evidence that such information was publicly known or entered the public domain (other than as a result of disclosure by me or any of my representatives in violation of this paragraph 1(b)) prior to disclosure thereof by me; or (iii) I am ordered by a court of competent jurisdiction to disclose Confidential Information; provided that I must (x) provide prompt written notice to the Company's Office of the General Counsel of any relevant process or pleadings that could lead to such an order and (y) cooperate with the Company to contest, object to or limit such a request and, in any case, I will furnish only that portion of the Confidential Information that is legally required to be disclosed in response to such court order.

    c. **Return of Property Upon Termination.** I acknowledge and agree that all notes, records, reports, sketches, plans, unpublished memoranda or other documents, whether in paper, electronic or other form (and all copies thereof), held by me, including in my previous position as a partner of BDO USA, LLP prior to its conversion to BDO USA, P.A., concerning any information relating to the business of the Company, whether confidential or not, are the property of the Company. I will deliver to the Company at the termination of employment, or at any other time the Company may request, all equipment, laptops, files,

Ptr # 3955

property, memoranda, notes, plans, records, reports, printouts and software and other documents and data (and all electronic, paper or other copies thereof) belonging to the Company that includes, but is not limited to, any materials that contain, embody or relate to the Confidential Information, Work Product (as defined below) or the business of the Company, or its clients, which I may then possess or have under my control. I will take any and all actions reasonably deemed necessary or appropriate by the Company from time to time in its sole discretion to ensure the continued confidentiality and protection of the Confidential Information. I will notify the Company, through its Office of General Counsel, promptly and in writing of any circumstances of which I have knowledge relating to any disclosure to or possession or use of any Confidential Information (a) by any person or entity other than those authorized by the terms of this Agreement or (b) by an authorized person in an unauthorized manner.

2. **Protection Of Company Interests.**

   a. **Non-Solicitation of Clients and Employees.** In further consideration of the compensation to be paid to me for my employment and my participation in the BDO USA, P.A. Non-Qualified Retirement Plan, I acknowledge that in the course of my employment with the Company (or in my prior position as a partner of BDO USA, LLP prior to its conversion into BDO USA, P.A.) I have, and will continue to, become familiar with the Company's trade secrets, methods of doing business, business plans and other valuable Confidential Information concerning the Company and its clients and suppliers and that my services have been and will continue to be of special, unique and extraordinary value to the Company. I agree that, so long as I am employed by the Company or any of its affiliates and continuing for two (2) years thereafter (regardless of the reason of my termination of employment) (the "<u>Restricted Period</u>"), if:

   (i) I directly or indirectly solicit or obtain for myself, or for a firm with which I am or become associated, engagements to perform, or if I or a firm with which I am associated does perform, accounting, auditing, tax and/or consulting services, or related services, or any other services which the Company then offers directly or through a subsidiary or an affiliate, for a client of the Company for whom I directly provided substantive services, during my employment by the Company (or in my prior position as a partner of BDO USA, LLP prior to its conversion to BDO USA, P.A.), (other than personal clients developed by me only as a result of my independent recruitment efforts which neither BDO USA, LLP nor the Company subsidized or otherwise financially supported as part a program of client development) (a "<u>Direct Client</u>"), or a prospective client that I directly recruited or solicited during my employment with the Company (or in my prior position as a partner of BDO USA, LLP prior to its conversion into BDO USA, P.A.) (a "<u>Direct Prospective Client</u>"), or cause a Direct Client or any person, company, partnership or other entity who provides, has provided or would reasonably be expected to provide referrals of clients or prospective clients to the Company to terminate that relationship, then I shall compensate the Company for any loss, damage, and expense suffered by the Company (the "<u>Damages</u>") as follows: (1) for any Direct Client engagements lost by the Company, an amount equal to one hundred fifty percent (150%) of the fees charged by the Company either (x) during the last full fiscal year during which the Direct Client was a client of the Company (or its predecessor) or (y) during the twelve (12) month period prior to the last date upon which the Company (or its predecessor) performed services for the Direct Client, whichever is greater; (2) for any Direct Prospective Clients, one hundred fifty percent (150%) of the proposed fee.

   (ii) I solicit, lure away, or cause an officer, director or employee of the Company with whom I had contact during my employment with the Company (or in my prior position as a partner of BDO USA, LLP prior to its conversion to BDO USA, P.C.) to leave its employ, then I shall compensate the Company for Damages as follows: an amount equal to thirty percent (30%) of the annual earnings of each officer, director or employee who leaves, to cover recruiting replacements, plus an additional ten percent (10%) for each year of service of the officer, director or employee to cover training costs.

DocuSign Envelope ID: CC5C7AAD-7731-4539-A40F-20A6576AADBE

      (iii)    I otherwise cause the Company financial loss or damage, then I shall compensate the Company for such Damages as are reasonably determined by the Board of Directors for the Company.

I agree to pay to the Company the Damages owing under subsections (i) through (iii) with interest at the prime rate as charged from time to time by the principal bank(s) used by the Company at such times, in five (5) equal annual installments commencing thirty (30) days from the date of notice from the Chief Executive Officer, or their designee, with succeeding payments to be made on the anniversary of such notice.

    **b.**    **Duty of Loyalty.** During my employment I will submit to the Company all business, commercial and investment opportunities or offers presented to me or of which I become aware which relate to the businesses of the Company as such businesses of the Company exist ("Corporate Opportunities"). Unless approved by the Board of Directors of the Company, I will not accept or pursue, directly or indirectly, any Corporate Opportunities on my own behalf.

    **c.**    **No Restrictions on Right to Practice Law.** Nothing in this Paragraph 2 will prohibit me from engaging in the practice of law following my employment with the Company, and this Paragraph 2 will be interpreted to comply with the American Bar Association Model Rule 5.6 and/or any state counterpart.

    **3.**    **Non-Disparagement.** I agree that during my employment, and after my employment with the Company ends for any reason, I will not make any false or disparaging statement(s) about the Company or its business or employees, to other employees, clients, vendors or any other third party.

    **4.**    **Limitations On Confidentiality and Non-Disparagement.** Nothing in this Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity including but not limited to the Department of Justice, the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration and any Inspector General, or making other disclosures that are protected under the whistleblower provisions of federal law or regulation. I do not need the prior authorization of the Company to make any such reports or disclosures and I am not required to notify the Company that I have made such reports or disclosures. I understand that I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

    **5.**    **Other Obligations.**

    **a.**    **Independence Obligation.** I agree to notify the Assurance National Technical Principal (or equivalent role/title) for my office of any conversations by me, while employed by the Company, with any of the Company's attest clients regarding possible employment. It is understood and agreed that this notice is required so that the Company may take steps toward effectively eliminating the risk that, by reason of knowledge of and relationships with the Company, I could adversely influence the quality or effectiveness of an engagement for which independence is required. Notwithstanding the foregoing obligation, I further agree that I will not take a position in a financial reporting oversight role (as defined in Rule 2-01(f)(3)(ii) of SEC Regulation S-X; such positions include, but are not limited to: a member of the board of directors, chief executive officer, chief financial officer, chief operating officer, chief accounting officer, controller, director of internal audit, director of financial reporting, treasurer, or any equivalent position) at a publicly-held entity that is an audit client of the Company at that time, if doing so would cause the Company to become not independent of that entity pursuant to Rule 2-01(c)(2)(iii) of SEC Regulation S-X. (This could occur if I was a member of the audit engagement team of that entity during the one (1) year period preceding the date that audit procedures commenced for the fiscal period that includes the date of my initial employment by the audit client, as proscribed by that rule. To comply with this rule, the entity must have filed with the SEC one annual report for a period subsequent to the period covered by the audit for which I was a member of the audit engagement team.) This prohibition will remain in effect after I have left the Company (whether by

DocuSign Envelope ID: CC5C7AAD-7731-4539-A40F-20A6576AADBE
Case 3:24-cv-00179-HEH   Document 1-1   Filed 03/11/24   Page 8 of 13 PageID# 39

Ptr # 3955

resignation, termination, or otherwise) for the duration of the prohibited period. I agree to discuss with the Assurance Regional Technical Director for my current or former office any position that may come within the foregoing restrictions. It is understood and agreed that this restriction is required for the Company to comply with the rules of the Securities and Exchange Commission and that, should I fail to comply with this restriction and if this would cause BDO to become not independent, the Company would be prohibited from further providing attest services to such client and consequently would suffer significant and irreparable injury.

      **b.**    **Subsequent Employment Protocol.** During my employment and for 24 months after termination of my employment for any reason, prior to accepting employment, partnership, or engagement with any other person or entity, I will provide my **prospective** employer or partnership with a copy of this Agreement.

      **c.**    **Transition of Work and Cooperation**. I understand that there may exist matters in which I may have been involved or of which I may have information regarding the affairs of the Company (or its predecessor) or clients or former clients of the Company (or its predecessor) that may require my time and attention following my employment with the Company, including in connection with any threat of or actual legal proceeding involving the Company or any of its current or former clients. I agree that I will cooperate with the Company in all such matters and render such services to the Company as the Chief Executive Officer or their delegate may determine to be necessary. In such event I shall be compensated for my time and services at a rate to be negotiated by me and the Company. If such service requires travel, I shall also be reimbursed for my reasonable, pre-approved, travel expenses.

**6.**    **Certifications.** By executing this Agreement, I certify that I: (a) have not and will not use or disclose to the Company any confidential information and/or trade secrets belonging to others, including my prior employers (excluding BDO USA, LLP); (b) will not use any prior inventions made by me and which the Company is not legally entitled to learn of or use; and (c) am not subject to any prior agreements that would prevent me from fully performing my duties for the Company.

**7.**    **Protection Of Proprietary Rights.**

      a.    I agree that all Work Product (defined below) and Intellectual Property Rights (defined below) will be the sole and exclusive property of the Company. "<u>Work Product</u>" means all writings, inventions, discoveries, ideas and other work product of any nature whatsoever that relates to the business, and/or actual or anticipated research or development of the Company and that I create on my own or in collaboration with others (i) during my employment with the Company (or in my prior position as a partner of BDO USA, LLP prior to its conversion to BDO USA, P.A.) or (ii) within 6 months following termination of my employment with the Company if conceived as a result of work done during my employment. "<u>Intellectual Property Rights</u>" means all rights in and to copyrights, trade secrets, trademarks (and related goodwill), patents and other intellectual property rights arising out of the Work Product, in any jurisdiction throughout the world, and all related rights of priority under international conventions. I will promptly and fully disclose to the Company any and all Work Product made or conceived or reduced to practice, either alone or jointly with others, during the term of my employment. I acknowledge that nothing in this paragraph will be interpreted as allowing me to use or disclose Confidential Information in violation of Paragraph 1.

      b.    I acknowledge that, by reason of being employed by the Company, all of the Work Product is, to the extent permitted by law, "work made for hire" and is the property of the Company. To the extent that any Work Product is not "work made for hire," I hereby irrevocably assign to the Company, for no additional consideration, my entire right, title and interest in and to all Work Product and Intellectual Property Rights therein. I agree to execute any further documents that the Company may request to evidence, establish, maintain, or protect its rights in and ownership of the Work Product.

      c.    During and after my employment, I agree to provide reasonable cooperation and assistance to the Company with respect to (i) applying for, obtaining, perfecting and/or transferring to the Company the Work Product and any Intellectual Property Rights in the Work Product in any jurisdiction in

the world; and (ii) the Company's actions in maintaining, protecting and/or enforcing such Intellectual Property Rights. I hereby irrevocably grant the Company power of attorney to execute and deliver any such documents on my behalf and in my name and to do all other lawfully permitted acts to transfer the Work Product to the Company and further the transfer, issuance, prosecution and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, in the event that I do not promptly cooperate with the Company's request. The power of attorney is coupled with an interest and will not be affected by my subsequent incapacity.

8. **Use of Name and Image**. I agree that the Company may make reasonable use of my name and image, including photographs or videos, for advertising, marketing and trade purposes.

9. **Injunctive Relief and Attorney's Fees.** I agree that in the event I breach this Agreement, the Company will be irreparably harmed and entitled to an injunction restraining any further breach, in addition to any other rights to which it is entitled. Further, I will be responsible for all attorneys' fees, costs, and expenses incurred by the Company to enforce this Agreement.

10. **Modification & Severability.** If any portion of this Agreement will be held unenforceable, the parties agree that a court of competent jurisdiction may modify the agreement (by adding and/or removing language) or sever unenforceable provisions in order to render this Agreement enforceable to the fullest extent permitted by law.

11. **At-Will Employment Status.** I acknowledge and agree that nothing in this Agreement alters my status as an employee at will.

12. **Assignment.** This Agreement is personal to me, and I may not assign, delegate or otherwise transfer it or any of my rights, interests, or obligations hereunder without the prior written approval of the Company. Without my consent, the Company may (a) assign any or all of its rights and interests under the Agreement to one or more of its subsidiaries, affiliates and designate one or more of its subsidiaries or affiliates to perform its obligations hereunder, or (b) assign its rights and interests under this Agreement to any person or entity that acquires any percentage of the Company or any of its assets. All provisions of this Agreement shall be binding upon and inure to the benefit of the Company and its successors, affiliates, and assigns.

13. **Change of Position.** If the Company changes my position or title with the Company, or transfers me from one subsidiary or affiliate to another, this Agreement and my obligations hereunder will remain in force.

14. **Protections For Affiliates and Subsidiaries.** This Agreement is intended to benefit all Company subsidiaries and affiliates for which I perform services, for which I have client contact, or about which I receive Confidential Information. Therefore, any Company subsidiary or affiliate that may be adversely affected by a breach may enforce this Agreement regardless of which entity actually employs me at the time.

15. **Entire Agreement.** This Agreement and the documents referred to in it constitute the entire agreement between the Company and me concerning the subject matter herein; provided, however, that any agreement that I have with the Company, including but not limited to as a stockholder or under any retirement plan, may provide remedies in addition to any remedies available under this Agreement. Neither I nor the Company may amend this Agreement without the written consent of the other.

16. **Governing Law, Venue, and Jurisdiction.** This Agreement will be governed by the laws of the State Delaware, irrespective of the residence of the parties. I agree to and hereby do submit to venue and jurisdiction solely before any state or federal court in Delaware, and I hereby waive any right to raise the questions of jurisdiction and venue in any action that the Company may bring.

Ptr # 3955

DocuSigned by:

*Vin Phan*

274DB6D7207E448...

**Phuoc Vin Phan**

6/14/2023

_____

Date

DS

*Stephen R. Ferrara*

_____

**Company**

6/14/2023

_____

Date

## FIRST AMENDMENT

This First Amendment (the "First Amendment") is entered into between the undersigned Employee ("Employee") and BDO USA, P.C. (formerly known as BDO USA, P.A. and prior to that known as BDO USA, LLP) (the "Company") based on the agreement(s) between the Company and Employee. This First Amendment applies to all of the following agreements that the Company and Employee have entered into in the past, as applicable (collectively, the "Agreements"):

- BDO USA, P.A. Manager Agreement
- BDO USA, P.A. Confidentiality Agreement
- BDO USA, LLP Manager Agreement
- BDO USA, LLP Confidentiality Agreement
- BDO Partner/Principal Employment Agreement

All terms and conditions in the Agreements related to governing law, venue and jurisdiction are hereby amended to the following:

- "This Agreement will be governed by the laws of the State of Virginia, irrespective of the residence of the parties. Employee agrees to and hereby does submit to venue and jurisdiction solely before any state or federal court in Virginia, and Employee hereby waives any right to raise the questions of jurisdiction and venue in any action that the Company may bring. Employee agrees to accept process in any such action. Note: this paragraph shall not apply to any employee residing in California."

Additionally, Section 2 of the Employee's BDO Partner/Principal Employment Agreement is amended to reduce Employee's current annualized salary by 0.0%, which reduction shall remain in place until at least the conclusion of fiscal year 2024.

In the event of any conflict, inconsistency, or incongruity between the provisions of this First Amendment and any of the provisions in the Agreements, the provisions of this First Amendment shall control. All other terms, covenants and conditions of the Agreements shall remain in full force and effect, and the same are hereby ratified and confirmed.

This First Amendment will only become effective upon the closing of the transaction pursuant to which the BDO USA Employee Stock Ownership Trust purchases approximately 42% of the common stock of the Company.

## FIRST AMENDMENT TO EMPLOYMENT AGREEMENT

By Employee's signature below, Employee acknowledges that Employee has read, fully understands and agrees to the terms of this First Amendment.

_____
**Employee**
Phuoc Phan
_____
Date August 22, 2023

## FIRST AMENDMENT TO EMPLOYMENT AGREEMENT

**BDO USA, P.C.**

*/s/ Stephen R. Ferrara*

Name: Stephen R. Ferrara
Title: Chief Operating Officer

Date: August 31, 2023