IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BDO USA, P.C., )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:24-cv-179-HEH
)
ANKURA CONSULTING GROUP, LLC, )
*et al.*, )
)
        Defendants. )

## MEMORANDUM OPINION
(Granting Plaintiff's Motion for Joinder and for Leave to File Amended Complaint)

THIS MATTER is before the Court on Plaintiff BDO U.S.A., P.C.'s ("Plaintiff" or "BDO") Motion for Joinder and for Leave to File Amended Complaint (the "Motion," ECF No. 42), filed on June 25, 2024. Plaintiff seeks to join Defendant Kevin Lavin ("Lavin") to this action and seeks leave to file an Amended Compliant. (Mot. at 1.) The parties have submitted extensive memoranda in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. VA. LOC. CIV. R. 7(J). For the reasons that follow, the Court will grant Plaintiff's Motion.

### I. BACKGROUND

#### A. Factual Background

Plaintiff BDO is a professional corporation that provides assurance, tax, and financial advisory services to clients of various industries nationwide. (Compl. ¶¶ 9, 17.)

Plaintiff is incorporated in the Commonwealth of Virginia and its principal place of business is in Illinois. (*Id.* ¶ 9.) Defendant Phan worked in Plaintiff's Nashville, Tennessee office as the National Practice Leader for Plaintiff's Healthcare Transaction Advisory Services ("TAS") practice between May 13, 2019, and January 13, 2024. (*Id.* ¶¶ 1, 11, 24.) Phan managed and oversaw the Healthcare TAS practice and its employees. (*Id.* ¶ 24.) Defendant Ankura is a limited liability company, is a direct competitor of Plaintiff, and is incorporated in Delaware with its principal place of business in New York. (*Id.* ¶¶ 10, 22.)

Plaintiff's Healthcare TAS practice "provides strategic transaction services to a wide variety of healthcare and healthcare-related clients and is valued at more than $60 million." (*Id.* ¶ 23.) Plaintiff's employees have access to company trade secrets and confidential information in order to provide services and maintain client relationships. (*Id.* ¶¶ 19–20.) To protect this confidential information, Plaintiff requires employees to annually review a policy manual and utilize security measures when using company information technology ("IT") systems. (*Id.* ¶ 21.) Plaintiff also requires senior employees, such as Defendant Phan, to enter into employment agreements which contain confidentiality provisions. (*Id.*) Additionally, Phan's employment agreement contained a non-solicitation covenant which stated that, during his employment and for two (2) years thereafter, he would not "solicit, lure away, or cause" any of Plaintiff's employees with whom he had contact to leave its employ. (*Id.* ¶ 37 (quoting BDO Partner/Principal Employment Agreement at 5, ECF No. 1-1).)

In the summer of 2023, Ankura began plotting to steal Plaintiff's Healthcare TAS

2

practice, and reached out to Phan with an offer to hire him to lead its TAS practice. (*Id.* ¶ 43.) On January 9, 2024, Phan resigned and informed Plaintiff that he had taken a position at Ankura. (*Id.* ¶ 45.) At that time, Plaintiff's Healthcare TAS practice consisted of eleven (11) employees who reported directly to Phan. (*Id.* ¶ 25.) Seven (7) of these employees also resigned between January 5 and January 12, 2024. (*Id.* ¶ 46.) Six (6) of the resigning employees were managers and had signed confidentiality and non-solicitation agreements with Plaintiff. (*Id.* ¶ 47.) These agreements precluded the employees from "retaining, using, or disclosing BDO's and BDO clients' confidential information after their departure." (*Id.* ¶ 48.) The agreements also prohibited the employees from soliciting employees, clients, and prospective clients for 18 (eighteen) months after the employee's departure from the firm. (*Id.*)

The departure of Phan and the seven (7) other employees was detrimental to Plaintiff's ongoing work and its clients. (*Id.* ¶ 50.) By mid-February 2024, Ankura hired all of the outgoing employees for its own TAS practice now led by Phan. (*Id.* ¶ 57.) In the months leading up to his resignation, Phan covertly solicited the departure of these employees. (*Id.* ¶¶ 58–59.) Among the employees solicited were Thomas Bradey ("Bradey") and Mitchell Thomas ("Thomas"). (*Id.* ¶ 7.)

On January 10, 2024, the day after Phan resigned, Plaintiff discovered that Phan had taken over 12.5 gigabytes of data from Plaintiff's secure IT system and was attempting to steal an additional 1.2 gigabytes of data. (*Id.* ¶ 64.) While Plaintiff was closed for the holidays between December 23, 2023, and January 2, 2024, Phan used his personal email address to download 1,715 files containing confidential company and

3

client information to a non-BDO-issued computer. (*Id.* ¶¶ 66–69.) Upon learning of the theft, Plaintiff terminated Phan's access to the IT system, preventing the loss of the 1.2 gigabytes of additional confidential information, and immediately contacted him to schedule a meeting. (*Id.* ¶¶ 70–72.)

Phan provided Plaintiff with an inventory of what information he had taken and agreed to meet on a recorded Zoom meeting with Plaintiff's in-house and outside counsel on January 13, 2024. (*Id.* ¶¶ 74–75.) During this call, Phan shared the contents of his personally owned computer, and Plaintiff's counsel supervised him while he deleted all confidential information from the provided inventory. (*Id.* ¶ 76.) After the call, Plaintiff accelerated Phan's departure from the company by terminating his employment that same day. (*Id.* ¶ 77.)

Between approximately January 9, 2024, and January 26, 2024, three (3) of the seven (7) employees who left their positions with Plaintiff to work for Ankura also attempted to steal Plaintiff's confidential information. (*Id.* ¶¶ 82–90.) All three (3) individuals were contacted and confronted separately by Plaintiff's counsel on a virtual meeting, during which Ankura's counsel was also present. (*Id.* ¶¶ 85, 92, 102.) Two (2) of the employees had downloaded the stolen information to Ankura-issued laptops, and, at Plaintiff's request, Ankura repossessed the laptops for secured storage in their Washington, D.C. office. (*Id.* ¶¶ 98, 106.)

### B. Procedural History

Plaintiff filed its initial Complaint (ECF No. 1) on March 11, 2024, alleging that Ankura and Phan, by stealing a portion of their business, violated both federal and state

4

laws. The initial Complaint brings eight (8) counts against Defendants: Misappropriation of Trade Secrets – Defend Trade Secrets Act ("DTSA") against Ankura (Count I); Misappropriation of Trade Secrets – Virginia Uniform Trade Secrets Act ("VUTSA") against Ankura (Count II); Tortious Interference with Phan's Employment Agreement against Ankura (Count III); In the Alternative, Tortious Interference with Phan's Employment Agreement against Ankura, pursuant to Tenn. Code Ann. § 47-50-109 (Count IV); Unjust Enrichment against Ankura (Count V); Breach of Contract – Employment Agreement against Phan (Count VI); Breach of Fiduciary Duty against Phan (Count VII); and Unjust Enrichment against Phan (Count VIII). (*Id.* ¶¶ 108–169.)

Defendant Ankura filed a Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, for Failure to State a Claim (ECF No. 13), and Defendant Phan filed a Motion to Dismiss for Failure to State a Claim (ECF No. 18) (collectively, the "Motions to Dismiss") on April 23, 2024. Plaintiff filed responses in opposition (ECF Nos. 33, 34) to Defendants' Motions to Dismiss on May 28, 2024, and then filed the present Motion on June 25, 2024. Plaintiff seeks to amend its Complaint by joining Kevin Lavin ("Lavin"), Ankura's CEO, as a defendant, adding an additional count, and adding additional facts. (Mem. in Supp. at 1, 4–7, ECF No. 43.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give [parties] leave [to amend pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). The Fourth Circuit has embraced "liberally allow[ing] amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729

5

(4th Cir. 2010) (citation omitted). As the Fourth Circuit has explained, "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001)).

"A motion to amend a pleading should only be denied as futile if a proposed amendment advances a claim or defense that is frivolous or legally deficient on its face." *Hillyard v. Warren*, No. 5:02-cv-329, 2003 WL 25904136, at *4 (E.D.N.C. July 3, 2003) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "Whether a complaint fails to state a claim, and, thus, amendment would be futile is analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Raub v. Campbell*, No. 3:13-cv-328–HEH, 2014 WL 130974, at *2 (E.D. Va. Jan. 14, 2014). Pursuant to Rule 12(b)(6), a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

"A 'court determining whether to grant a motion to amend' that would add parties to the action 'must consider both the general principles of the amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." *Moore v. Va. Cmty. Bankshares, Inc.*, No. 3:19-cv-45, 2022 WL 969767, at *7 (W.D. Va. Mar. 30, 2022) (quoting *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001)).

6

Rule 20 allows defendants to be joined in an action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).

### III. DISCUSSION

#### A. Plaintiff's Motion for Leave to File

##### 1. The Court declines to determine whether personal jurisdiction exists at this stage.

Defendant Ankura first argues that Plaintiff's amendments are futile because this Court lacks personal jurisdiction over it. (Ankura's Resp. in Opp'n at 5–14, ECF No. 44.) Ankura asserts that Virginia's long-arm statute does not allow for specific jurisdiction in this case. (*Id.* at 5–10.) Ankura also argues that it is not so "closely related" to Phan that it should have foreseen being sued in this forum. (*Id.* at 10–14.)

However, courts in the Fourth Circuit are generally hesitant to consider jurisdictional challenges when reviewing a motion for leave to amend a pleading. *See Taylor v. Sethmar Transp., Inc.*, No. 2:19-cv-770, 2020 WL 1181531, at *3–4 (S.D.W. Va. Mar. 11, 2020) (granting leave to amend when the amendments supported personal jurisdiction, noting that an amended pleading would supersede the original and a new motion to dismiss would be warranted); *Pridgen v. Appen Butler Hill, Inc.*, No. JKB-18-61, 2019 WL 1048950, at *3–4 (D. Md. Mar. 5, 2019) (granting leave to amend despite claims of futility for lack of personal jurisdiction). Further, Plaintiff contends that its

7

proposed amendments bolster its grounds for jurisdiction. (Reply at 11–15, ECF No. 46.) Thus, the Court will decline to address whether personal jurisdictional exists at this stage.

### 2. Counts I and II: Misappropriation of Trade Secrets under the Defend Trade Secrets Act and Virginia Uniform Trade Secrets Act

Defendants next argue that Plaintiff's Motion should be denied as futile because the Complaint fails to state a claim pursuant to Rule 12(b)(6). (Ankura's Resp. in Opp'n at 4; Phan's Resp. in Opp'n at 3, ECF No. 45.) The Court addresses each of Plaintiff's claims[1] and, for the reasons that follow, Plaintiff's Motion is not futile and will be granted.

Ankura argues that Plaintiff's initial and proposed amended complaints fail to state a claim for Counts I and II, which allege misappropriation of trade secrets pursuant to both the DTSA and VUTSA. (Ankura's Resp. in Opp'n at 15–17.) "To establish a misappropriation of trade secrets claim under the DTSA, a plaintiff must show (1) the information constitutes a trade secret, and (2) the defendant misappropriated the trade secret by improper means or conspired to use improper means to misappropriate the trade secret". *Salomon & Ludwin, LLC v. Winters*, 2024 WL 3511629, No. 3:24-cv-389–HEH, at *3 (E.D. Va. Jul. 23, 2024) (citing U.S.C. § 1836 (b)(2)(A)(ii)(IV)). The DTSA defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information" where (1) "the owner thereof has taken reasonable measures to keep such information secret; and [(2)] the information derives independent economic value . . . from not being generally known [] and not being readily

---

[1] Defendants do not move for the dismissal of Count VII. Thus, the Court does not address it.

8

ascertainable through proper means." 18 U.S.C. § 1839(3). A defendant misappropriates a trade secret if he acquires the trade secret by improper means or discloses or uses a trade secret without consent. *Id.* § 1839(5). "'[I]mproper means' include[] theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 1839(6). The VUTSA definitions of trade secrets, misappropriation, and improper means are nearly identical to the DTSA, so the Court addresses Plaintiff's success on the merits of these claims collectively. *See* VA. CODE ANN. § 59.1-336, *et seq.*; *Salomon & Ludwin*, 2024 WL 3511629, at *3.

Ankura argues that both claims fail because Plaintiff has not alleged the existence of a trade secret, nor has Plaintiff alleged that Ankura was the party that misappropriated the secret.[2] (Ankura's Resp. in Opp'n at 15.) More specifically, Ankura contends that Plaintiff's Complaint does not contain a sufficient amount of factual detail to show that Plaintiff's information constitutes actual trade secrets under both DTSA and VUTSA. (*Id.*) However, Plaintiff provides detailed file sizes, names, and locations of much of the information taken. (*See* Compl., ¶¶ 68–69, 83–84, 96–97, 105, 109.) Plaintiff also describes the content of these files, which include management notes related to due diligence in a transaction, "a project status list[,] . . . a client contact list[,]" and templates. (Compl. ¶¶ 96–97.) These descriptions meet the Fourth Circuit's threshold for what constitutes a "trade secret" and would suffice to "put Defendants on notice as to

---

[2] In its Opposition, Ankura references arguments made in its Motion to Dismiss, sometimes without elaborating on them. (*See* Ankura's Resp. in Opp'n at 8, 11–12, 16.) This Court does not address every argument made in Ankura's Motion to Dismiss and, instead, focuses on the arguments related to futility that Ankura fully presents in its Opposition.

9

the precise information at issue." *See Design Gaps, Inc. v. Hall*, 3:23-cv-186-MOC, 2023 WL 8103156, at *9 (W.D.N.C. Nov. 21, 2023) (dismissing a DTSA claim as "nothing more than a recitation of the statutory definition of trade secrets"). Plaintiff's Complaint also outlines precisely how it derives economic value from protecting this information. (*See* Compl., ¶ 110); *see also JTH Tax LLC v. Cortorreal*, No. 2:23-cv-355, 2024 WL 897605, at *6 (E.D. Va. Mar. 1, 2024) (dismissing a claim for violation of the DTSA because plaintiff "never describes or explains the materials and how [the plaintiff] derives economic value from them").

Ankura further contends that Plaintiff does not adequately allege it was Ankura that misappropriated the trade secrets. (Ankura's Resp. in Opp'n at 16–17.) Contrary to Ankura's contention, Plaintiff's Complaint alleges that Bradey and Thomas were both Ankura employees at the time of the data transfer and that both uploaded some of the data onto Ankura-issued laptops and Ankura's file storage system. (*See* Compl. ¶¶ 90, 93–94, 99–100, 112.) Because they were hired into a similar Healthcare TAS practice, the data they took from Plaintiff reasonably pertained to their newfound workplace responsibilities. *See Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018) (finding employer liability exists if the tort is "reasonably traced to workplace responsibilities"). Ankura argues that Bradey's and Thomas' actions were independent of their workplace requirements, and that Ankura "never asked for this information to be taken." (Ankura's Opp'n at 16 n.12.) However, "[o]ne can act in the scope of one's employment even if the specific acts performed are explicitly forbidden by the employer." *See MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 418 (E.D.

10

Va. 2004). Thus, even if Ankura did not encourage or directly induce employees to take the information, Plaintiff has adequately pled that the employees acted "with the intent to further the employer's interest," which is sufficient to establish general applicability of *respondeat superior* at this stage. *See Garnett*, 892 F.3d 140 at 145.

Accordingly, Plaintiff has adequately pled both the DTSA and the VUTSA claims, and the amendment of Counts I and II is not futile.

### 2. Counts III and IV: Tortious Interference with Phan's Employment Agreement against Ankura under Virginia and Tennessee Law

Ankura argues that Plaintiff has failed to state a claim under Counts III and IV, which allege tortious interference pursuant to Virginia and Tennessee law, respectively. (Ankura's Resp. in Opp'n at 17–18.) Under Virginia law, tortious interference with a contract requires four (4) elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *DePuy Synthes Sales, Inc. v. Jones*, No. 2:13-cv-392, 2013 WL 8118533, at *3 (E.D. Va. Nov. 5, 2013) (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)). Additionally, "[i]f the contract or expectancy allegedly interfered with is terminable at will, Virginia law imposes the additional requirement that the interference be accomplished by improper methods." *Id.* (citing *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987)).

11

Ankura asserts that Plaintiff has not adequately alleged the elements of tortious interference. (Ankura's Resp. in Opp'n at 17–18.) This Court has previously found that satisfaction of the "intentional interference" element of tortious interference, has four (4) subparts, "(1) intent, (2) interference, (3) breach or termination, and (4) causation." *Boy Blue, Inc. v. Zomba Recording, LLC*, No. 3:09-cv-483-HEH, 2009 WL 2970794, at *3 (E.D. Va. Sept. 16, 2009). Plaintiff alleges each of these subparts satisfactorily within the Proposed Amended Complaint. Specifically, Plaintiff states that "Ankura, with Lavin's full participation and knowledge, began plotting in the summer of 2023 to steal BDO's Healthcare TAS practice" and that, with knowledge of their contractual obligations, Ankura and Lavin induced employees to leave BDO to work for Ankura. (Proposed Am. Compl. ¶¶ 47, 66, 67, 69, ECF No. 43-1.) This is enough to sufficiently plead the element of intentional interference.

Ankura also argues that Plaintiff fails to establish that Ankura used improper methods in the tortious interference. (Ankura's Resp. in Opp'n at 18.) However, the Court finds that the contract at issue was not terminable at will and, thus, Plaintiff is not required to allege that improper methods were used. Phan's employment agreement contains a two-year non-solicitation provision following the termination of his employment. Phan and his team "were free to leave [BDO] to pursue other interests, but not to violate their post-termination covenants." *DePuy Synthes Sales, Inc.*, 2013 WL 8118533, at *4. Because of this provision, Phan's employment agreement is not "terminable at-will," and thus Plaintiff is not required to establish improper methods. *Id.* at *4–6 (finding that employment contracts with restrictive covenants lasting eighteen

12

(18) months beyond termination of employment, were not "at-will contracts", and thus not subject to the improper methods analysis). Accordingly, Plaintiff's amendments to Count II are not futile.

Ankura also argues that Plaintiff's proposed amendments to its tortious interference claim under Tennessee law are futile. (Ankura's Resp. in Opp'n at 17–18.) The requirements for tortious interference under Tennessee law overlap with those of Virginia law. Thus, the Court will focus on Ankura's sole remaining contention: that the additional element of "malice" required by Tennessee law, has not been met in Plaintiff's claim. (*See id.*); *DSG Commer. Eco Cleaning Sys., Inc. v. DHL Express (USA), Inc.*, No. 2:23-cv-2093-MSN-tmp, 2024 WL 532329, at *6–7 (W.D. Tenn. Feb. 9, 2024); *see also* TENN. CODE ANN. § 47-50-109.

In evaluating the existence of malice, "[a] showing of 'ill will or spite toward the injured party' is not necessary." *Walt Goodman Farms, Inc. v. Hogan Farms, LLC*, No. 1:22-cv-1004-JDB-jay, 2022 WL 3006841, at *3 (W.D. Tenn. July 28, 2022) (quoting *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 639 (M.D. Tenn. 2006)). To sufficiently plead malice, Plaintiff must allege that Defendants' actions were not only intentional, but also without legal justification. *Santoni v. Mueller*, No. 3:20-cv-975, 2022 WL 97049, at *10 (M.D. Tenn. Jan. 10, 2022). "Interference is without justification if it is done for the indirect purpose of injuring plaintiff or benefiting the defendant at the plaintiff's expense." *Id.* (quoting *Crye-Leike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-287, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998)).

13

Based on the discussion above, the Court finds that Plaintiff's Proposed Amended Complaint sufficiently pleads interference. Plaintiff alleges that Ankura and Lavin planned to steal its Healthcare TAS practice, an act that would benefit Ankura and Lavin at Plaintiff's expense. Thus, the element of "malice" is plausibly met on the face of the Proposed Amended Complaint.

Accordingly, Plaintiff has adequately pled tortious interference under both Virginia and Tennessee law and amendment of Counts III and IV is not futile.

### 3. Counts V and VIII: Unjust Enrichment Against All Defendants

Plaintiff brings two (2) counts against Defendants for unjust enrichment. (Compl. ¶¶ 143–49, 166–69.) Count V of the Proposed Amended Complaint alleges that Ankura and Lavin each benefitted from the solicitation and hiring of seven (7) of the eleven (11) members of BDO's Healthcare TAS practice. (Proposed Am. Compl. ¶ 163.) Count VIII alleges unjust enrichment against Defendant Phan for the same reason. (Compl. ¶¶ 166–69.)

A claim for unjust enrichment requires, "(1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that 'render it inequitable for the defendant to retain the benefit without paying for its value.'" *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (quoting *Nossen v. Hoy*, 750 F. Supp. 740, 745 (E.D. Va. 1990)).

Defendant Ankura argues on behalf of itself and Lavin that Plaintiff's Complaint and Proposed Amended Complaint fail to meet any of the above elements. (Ankura's

14

Resp. in Opp'n at 18–19.) Ankura first contends that an unjust enrichment claim requires a benefit to be "intentionally conferred" on them by Plaintiff. (*Id.*) However, a benefit does not need to be voluntarily given by the plaintiff to be "conferred" for the purposes of an unjust enrichment claim. *See In re Bay Vista of Va., Inc.*, No. 2:09-cv-46, 2009 WL 2900040, at *5 (E.D. Va. June 2, 2009) ("The fact that [the d]efendants are alleged to have intentionally acted to improperly seize and retain such benefit, rather than such benefit being voluntarily *conferred* [], is inconsequential."). Plaintiff's Proposed Amended Complaint alleges that Defendants Ankura and Lavin improperly enticed employees to violate agreements, effectively crippling BDO's Healthcare TAS practice. (Compl. ¶ 44; Proposed Am. Compl. ¶¶ 47, 72–76, 163–66.) Accordingly, the impermissible hiring of BDO's employees, despite knowledge of contractual obligations, satisfies the first element of the unjust enrichment claim. Plaintiff also alleges that both Ankura and Lavin had full knowledge that the "Healthcare TAS practice was highly profitable and valued in the millions of dollars," meeting the second element of "knowledge." (Proposed Am. Compl. ¶ 165.)

The third and final element of an unjust enrichment claim is the acceptance and retention of an inequitable benefit. *See Microstrategy, Inc.*, 368 F. Supp. 2d at 537. Plaintiff alleges that Ankura and Lavin "wrongfully derived substantial benefits from [the] theft," including the building of an entire practice using BDO's former employees and proprietary information. (*Id.* ¶¶ 162–69.) Plaintiff was not reimbursed for the effective loss of its practice and it contends that allowing Defendants to retain its value would be inequitable. (*Id.* ¶¶ 165–68.) Thus, all elements of Plaintiff's unjust

enrichment claim against Ankura may be sufficiently alleged by Plaintiff in its Proposed Amended Complaint. Consequently, its amendment is not futile.

Count VIII alleges unjust enrichment against Defendant Phan. (Compl. ¶¶ 166–69.) Phan argues that Plaintiff's unjust enrichment claim is barred by its breach of contract claim against him in Count VI, thus warranting its dismissal. (Phan's Resp. in Opp'n at 5, ECF No. 45.) The Eastern District has long held that "a condition precedent to the assertion of [unjust enrichment] is that no express contract exists between parties." *Butts v. Weltman, Weinberg & Reis Co., LPA*, 2013 WL 6039040, *3 (E.D. Va. Nov. 14, 2013) (citing *Volmar v. CSX Transp., Inc.*, 705 F. Supp. 1154, 1176 (E.D. Va. 1989)). However, this condition precedent hinges on whether both parties agree on the validity of the contract at issue. *See Cortez-Melton v. Capital One Fin. Corp.*, Nos. 3:19-cv-127, 3:20-cv-404, 3:20-cv-415, 2021 WL 771754, at *11 (E.D. Va. Feb. 26, 2021) (finding that, because both parties to a severance agreement agreed to its authenticity before the court, the contract undisputedly governed the matter and thus barred an unjust enrichment claim in addition to a breach of contract).

Here, Defendant Phan disputes the enforceability of the employment agreement at the center of Plaintiff's breach of contract claim, indicating a disagreement as to its applicability in the matter. (Phan's Resp. in Opp'n at 5.) Thus, if Count VI were to fail due to the contract's invalidity, it is lawful for BDO to have "set out two or more statements of a claim . . . alternatively. . . ." FED. R. CIV. P. 8(d)(2). Although the Court acknowledges that Plaintiff is barred from recovering on *both* claims, the current claim against Phan for unjust enrichment is sufficient and amending Count VIII is not futile.

16

#### 4. Count VI: Breach of Contract Against Phan

Defendant Phan argues that Count VI should be dismissed because the Non-Solicitation Agreement within Phan's employment agreement is unenforceable as a matter of law. (Phan's Resp. in Opp'n at 5.)

In Virginia, "[a] non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 618 S.E.2d 340, 342 (Va. 2005) (citing *Modern Env'ts, Inc. v. Stinnett*, 561 S.E.2d 694, 695 (2002); *Simmons v. Miller*, 544 S.E.2d 666, 678 (2001)).

It is premature to assess whether Phan's employment agreement is overly broad. The Virginia Supreme Court has stated that "restraints on competition", such as a non-solicitation agreement, "are neither enforceable nor unenforceable in a factual vacuum." *Assurance Data, Inc. v. Malyevac*, 747 S.E.2d 804, 808 (Va. 2013). Hence, "[a]n employer may prove a seemingly overbroad restraint to be reasonable under the particular circumstances of the case." *Id.* (citations omitted). Consequently, the Court often precludes dismissal of claims based on the enforceability of a covenant before, "the party seeking to enforce the restrictive covenant . . . [is] afforded the opportunity to present evidence" that the covenant is enforceable. *Lumber Liquidators, Inc. v. Cabinets To Go, LLC*, 415 F. Supp. 3d 703, 717 (E.D. Va. 2019) (citation omitted); *see also Southern Trust Mortgage, LLC v. Carson*, No. 2:22-cv-245, 2023 WL 3922623, at *5 (E.D. Va.

17

May 23, 2023) (denying a motion to dismiss a breach of contract claim involving a restrictive covenant).

Accordingly, dismissal of Count VI would be premature, and amednment is not futile.

### 5. Count IX: Aiding and Abetting a Breach of Fiduciary Duty Against Lavin and Ankura

Plaintiff seeks to allege a new claim against Defendants Lavin and Ankura in its Proposed Amended Complaint: Aiding and Abetting a Breach of Fiduciary Duty (Count IX). (Proposed Am. Compl. ¶¶ 193–98.) Ankura argues that this count should be dismissed because aiding and abetting a tort is not a recognizable independent cause of action. (Ankura's Resp. in Opp'n at 19–20.) It is true that Virginia does not recognize "a separate tort for aiding and abetting a breach of fiduciary duty." *Keil v. Seth Corp.*, No. 3:21-cv-153, 2021 WL 5088242, at *14 (E.D. Va. Nov. 2, 2021). However, Virginia does allow a party to hold a joint tortfeasor liable if it knew about the breach of trust and participated in the breach for its own benefit. *Id.* Because the label of the claim "is of little consequence[,]" the Court will construe Count IX as alleging an alternative theory of joint tortfeasor liability. *Id.* (quoting *Alliance Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12-cv-701–HEH, 2013 WL 143500, at *4 n.5 (E.D. Va. Jan. 11, 2013)). Because such a claim is viable under Virginia law, Plaintiff's addition of Count IX is not futile.

### B. Plaintiff's Motion for Joinder

Plaintiff seeks to amend its complaint to join Lavin as a defendant. (Mem. in Supp. at 1–7.) Plaintiff's Proposed Amended Complaint adds Lavin to Counts III, IV,

18

and V, and adds a ninth count: Aiding and Abetting a Breach of Fiduciary Duty against Ankura and Lavin. (Proposed Am. Compl. ¶¶ 148–69, 193–98.) Plaintiff alleges that both Ankura and Lavin contacted and encouraged Plaintiff's employees to violate existing employee agreements and to leave Plaintiff to build Ankura's own Healthcare TAS practice. (*Id.* ¶¶ 68–81.)

Plaintiff alleges that, as CEO of Ankura, Lavin played an "instrumental role in the scheme to raid [Plaintiff's] healthcare TAS practice [and] is part of the same 'transaction or occurrence' as the originally-pled facts . . . ." (Mem. in Supp. at 5.) Based on the facts contained in the Proposed Amended Complaint, the Court agrees that the role Lavin allegedly played was instrumental, and part of the same occurrence as the facts initially presented by Plaintiff. Hence, Plaintiff's Motion for Joinder of Lavin will be granted.

## IV. CONCLUSION

Accordingly, the Court will grant Plaintiff's Motion (ECF No. 42) and will allow it to join Lavin and file an Amended Complaint. An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 19, 2024
Richmond, Virginia