**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| BDO USA, P.C., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )      Case No. 3:24-cv-00179-HEH |
| | ) |
| ANKURA CONSULTING GROUP, LLC, | ) |
| PHUOC VIN PHAN and KEVIN LAVIN, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANT PHUOC VIN PHAN'S ANSWER,**
**AFFIRMATIVE AND OTHER DEFENSES, AND COUNTERCLAIM**

Defendant Phuoc Vin Phan ("Phan"), by counsel, states the following for his Answer, Affirmative and Other Defenses, and Counterclaim in response to the First Amended Complaint ("Complaint") filed by Plaintiff BDO USA, P.C. ("Plaintiff" or "BDO"):

**ANSWER**

Phan states the following for his Answer and Affirmative and Other Defenses in response to Plaintiff's Complaint:

**NATURE OF THE ACTION**

1. Phan admits that he is a former BDO employee and formerly served as the Healthcare Transaction Advisory Services National Practice Leader. Phan denies the remaining allegations contained in Paragraph 1.

2. Phan admits that he is a former BDO employee, formerly served as the Healthcare Transaction Advisory Services National Practice Leader and that he was responsible for managing and overseeing a team of employees and compensated when he was an employee of BDO. Phan denies the remaining allegations contained in Paragraph 2.

3.      In response to the allegations contained in the first sentence of Paragraph 3, Phan admits that BDO converted from a partnership to a professional corporation.   The remaining allegations contained in the first sentence of Paragraph 3 do not relate or pertain to Phan, and therefore, no response is required.   To the extent a response is deemed to be required to the remaining allegations contained in the first sentence of Paragraph 3, Phan lacks knowledge and information sufficient to admit or deny such allegations.   Phan denies the remaining allegations contained in Paragraph 3 and demands strict proof thereof.

4.      Phan denies the allegations contained in Paragraph 4.

5.      Phan denies the allegations contained in Paragraph 5.

6.      Phan denies the allegations contained in Paragraph 6.

7.      Phan denies the allegations contained in Paragraph 7.

8.      Phan denies the allegations contained in Paragraph 8.

9.      Phan admits that he is employed by Ankura.   Phan denies the remaining allegations contained in Paragraph 9.

**THE PARTIES**

10.      The allegations contained in Paragraph 10 do not relate or pertain to Phan, as they are directed at another party, and therefore, no response is required.   To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 10, and therefore, denies the same.

11.      The allegations contained in Paragraph 11 do not relate or pertain to Phan, as they are directed at another party, and therefore, no response is required.   To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 11.   Notwithstanding the same, upon information and belief,

Phan states that Ankura is a limited liability company organized under the laws of the state of Delaware with its principal place of business in the State of New York.

12.     The allegations contained in Paragraph 12 do not relate or pertain to Phan, as they are directed at another party, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 12.  Notwithstanding the same, upon information and belief, Phan states that Lavin is an individual and resident of the State of New York, who serves as the Chief Executive Officer of Ankura.

13.     Phan admits that he is an individual and resident of Tennessee, that he was previously employed by BDO in its Nashville, Tennessee office, and that he is a current employee of Ankura in Ankura's Nashville, Tennessee office.  Phan denies the remaining allegations, if any, contained in Paragraph 13.

### JURISDICTION AND VENUE

14.     Paragraph 14 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan states that 28 U.S.C. § 1331, 18 U.S.C. § 1836 and 28 U.S.C. § 1367 speak for themselves and denies any allegation inconsistent therewith.

15.     Paragraph 15 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 15, and therefore, denies the same and demands strict proof thereof.

16.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  Phan denies providing Ankura or Lavin with a copy of the First Amendment to

Employment Agreement, executed on August 22, 2023, prior to his employment with, or offer of employment with, Ankura.  The remaining allegations contained in Paragraph 16 state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 16.

17.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  Phan denies providing Ankura or Lavin with a copy of the First Amendment to Employment Agreement, executed on August 22, 2023, prior to his employment with, or offer of employment with, Ankura.  The remaining allegations contained in Paragraph 17 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 17.

18.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 18 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 18.

19.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 19 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, 28 § U.S.C. 1391

speaks for itself and Phan denies any allegations inconsistent therewith.  Phan denies the remaining allegations, if any, contained in Paragraph 19.

<strong>FACTS</strong>

20.     The allegations contained in Paragraph 20 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 20, and therefore, denies the same and demands strict proof thereof.

21.     The allegations contained in Paragraph 21 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 21, and therefore, denies the same and demands strict proof thereof.

22.     The allegations contained in Paragraph 22 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 22, and therefore, denies the same and demands strict proof thereof.

23.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 23 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 23, including subparts (a) through (d) thereof, and therefore, denies the same and demands strict proof thereof.

24.     The allegations contained in Paragraph 24 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 24, and therefore, denies the same and demands strict proof thereof.

25.     The allegations contained in Paragraph 25 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan admits that while he was employed at BDO the Healthcare Transaction Advisory Services ("TAS") practice provided transaction services to healthcare and healthcare-related clients.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 25, and therefore, denies the same and demands strict proof thereof.

26.     Phan admits that he was BDO employee from approximately April 15, 2019 until January 13, 2024, that he formerly served as the Healthcare Transaction Advisory Services National Practice Leader, and that as the National Practice Leader, he was responsible for management and oversight of the Healthcare TAS practice and its employees.  Phan denies the remaining allegations, if any, contained in Paragraph 26.

27.     Phan admits that he submitted his resignation to BDO on or about January 9, 2024.  Phan admits that while employed at BDO, the employees of the Healthcare TAS practice reported directly to him.  Phan denies the remaining allegations contained in Paragraph 27.

28.     The allegations contained in Paragraph 29 relate to a document which speaks for itself.  Phan denies any allegations inconsistent therewith.  In further response, Phan admits he entered into an Amended and Restated Partnership Agreement with BDO USA, LLP effective as of April 9, 2019, and that he was a fixed share partner.  Phan denies the remaining allegations, if any, contained in Paragraph 28.

29.     The allegations contained in Paragraph 29 relate to a document which speaks for itself.  Phan denies any allegations inconsistent therewith.  Phan denies the remaining allegations, if any, contained in Paragraph 29.

30.     The allegations contained in Paragraph 30 relate to a document which speaks for itself.  Phan denies any allegations inconsistent therewith.  Phan denies the remaining allegations, if any, contained in Paragraph 30.

31.     The allegations contained in Paragraph 31 relate to a document which speaks for itself.  Phan denies any allegations inconsistent therewith.  Phan denies the remaining allegations, if any, contained in Paragraph 31.

32.     Phan admits he entered into an Amended and Restated Partnership Agreement with BDO USA, LLP effective as of April 9, 2019, and that he received compensation and other employee benefits while employed at BDO.  Phan denies the remaining allegations contained in Paragraph 32 and demands strict proof thereof.

33.     Phan lacks sufficient knowledge and information to admit or deny the allegations stated in Paragraph 33, and therefore denies the same.

34.     The allegations contained in Paragraph 34 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 34, and therefore, denies the same and demands strict proof thereof.

35.     The allegations contained in Paragraph 35 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 35, and therefore, denies the same and demands strict proof thereof.

36.     The allegations contained in Paragraph 36 do not relate or pertain to Phan, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 36, and therefore, denies the same and demands strict proof thereof.

37.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, which document speaks for itself.  Phan denies any allegation inconsistent therewith.  Phan denies the remaining allegations, if any, contained in Paragraph 37.

38.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 38 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 38, and demands strict proof thereof.

39.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 39 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 39, and demands strict proof thereof.

40.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 40 state legal conclusions to which

no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 40, and demands strict proof thereof.

41.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement executed on August 22, 2023.  Such documents speak for themselves and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 41 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 41, and demands strict proof thereof.

42.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 42 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 42, and demands strict proof thereof.

43.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  The remaining allegations contained in Paragraph 43 state legal conclusions to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 43, and demands strict proof thereof.

44.    Phan denies the allegations contained in Paragraph 44 and demands strict proof thereof.

45.     Phan denies the allegations contained in Paragraph 45 and demands strict proof thereof.

46.     Phan admits that on or about August 17, 2023, Phan spoke with Ankura regarding a potential employment opportunity for Phan at Ankura.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 46, and therefore, denies the same and demands strict proof thereof.

47.     The allegations contained in Paragraph 47 do not relate or pertain to Phan, as they are directed at other persons or parties, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 47, and therefore, denies the same and demands strict proof thereof.

48.     Phan admits that he submitted his resignation to BDO on or about January 9, 2024, and that he informed BDO that he was taking a position at Ankura.  Phan denies the remaining allegations, if any, contained in Paragraph 48.

49.     The allegations contained in Paragraph 49 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan admits that Johnny Beauplan, Thomas Bradey, Zachary Gentry, Aram Gupta, William Mixon, Jeffrey O'Brien, and Mitchell Thomas directly reported to Phan while Phan was employed at BDO.  In further response, Phan understands that Johnny Beauplan, Thomas Bradey, Zachary Gentry, Aram Gupta, William Mixon, Jeffrey O'Brien, and Mitchell Thomas are no longer employed at BDO.  Phan otherwise lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 49, and therefore, denies the same.

50.     The allegations contained in Paragraph 50 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 50 states a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 50, and therefore, denies the same and demands strict proof thereof.

51.     The allegations contained in Paragraph 51 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 51 states a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 51, and therefore, denies the same and demands strict proof thereof.

52.     The allegations contained in Paragraph 52 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 52, and therefore, denies the same and demands strict proof thereof.

53.     To the extent the allegations contained in Paragraph 53 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 53, and therefore, denies the same.

54.     To the extent the allegations contained in Paragraph 54 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and

information sufficient to admit or deny the remaining allegations contained in Paragraph 54, and therefore, denies the same.

55.     The allegations contained in Paragraph 55 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 55, and therefore, denies the same and demands strict proof thereof.

56.     The allegations contained in Paragraph 56 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 56, and therefore, denies the same and demands strict proof thereof.

57.     The allegations contained in Paragraph 57 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 57 states a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 57, and therefore, denies the same and demands strict proof thereof.

58.     Phan admits that he is employed by Ankura.  Phan also admits that Beauplan, Bradey, Gentry, Gupta and O'Brien are employed by Ankura.  The remaining allegations contained in Paragraph 58 do not relate or pertain to Phan, as they relate to the knowledge and actions of others, and therefore, no response is required.  To the extent a response is deemed to

be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 58, and therefore, denies the same and demands strict proof thereof.

59.   The allegations contained in Paragraph 59 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.   To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 59, and therefore, denies the same.

60.   Phan admits that he Beauplan, Bradey, Gentry, Gupta, Mixon, O'Brien, and Thomas are employed by Ankura in Ankura's transaction advisory services practice and that Phan currently leads that practice.   Phan denies the remaining allegations contained in Paragraph 60 and demands strict proof thereof.

61.   Phan denies the allegations contained in Paragraph 61 and demands strict proof thereof.

62.   Phan denies the allegations contained in Paragraph 62 and demands strict proof thereof.

63.   Phan admits that Alistair Anthony is employed by Ankura.   Phan denies the remaining allegations contained in Paragraph 63 and demands strict proof thereof.

64.   Phan admits that Alistair Anthony is employed by Ankura.   Phan denies the remaining allegations contained in Paragraph 64.

65.   Paragraph 65 states a legal conclusion to which no response is required.   To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 65 and demands strict proof thereof.

66.   Phan denies the allegations contained in Paragraph 66 and demands strict proof thereof.

67.     Phan denies the allegations contained in Paragraph 67 and demands strict proof thereof.

68.     To the extent the allegations contained in Paragraph 68 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 68, and therefore, denies the same and demands strict proof thereof.

69.     To the extent the allegations contained in Paragraph 69 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 69, and therefore, denies the same and demands strict proof thereof.

70.     To the extent the allegations contained in Paragraph 70 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 70, and therefore, denies the same and demands strict proof thereof.

71.     Paragraph 71 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 71 and demands strict proof thereof.

72.     To the extent the allegations contained in Paragraph 72 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 72, and therefore, denies the same and demands strict proof thereof.

73.     Phan denies the allegations contained in Paragraph 73 and demands strict proof thereof.

74.    To the extent the allegations contained in Paragraph 74 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 74, and therefore, denies the same and demands strict proof thereof.

75.    Phan denies the allegations contained in Paragraph 75 and demands strict proof thereof.

76.    To the extent the allegations contained in Paragraph 76 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 76, and therefore, denies the same and demands strict proof thereof.

77.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  Phan denies providing Ankura or Lavin with a copy of the First Amendment to Employment Agreement, executed on August 22, 2023, prior to his employment with, or offer of employment with, Ankura.  Phan denies the remaining allegations contained in Paragraph 77 and demands strict proof thereof.

78.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith.  Phan denies providing Ankura or Lavin with a copy of the First Amendment to Employment Agreement, executed on August 22, 2023, prior to his employment with, or offer of

employment with, Ankura.  Phan denies the remaining allegations contained in Paragraph 78 and demands strict proof thereof.

79.     To the extent the allegations contained in Paragraph 79 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 79, and therefore, denies the same and demands strict proof thereof.

80.     To the extent the allegations contained in Paragraph 80 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 80, and therefore, denies the same and demands strict proof thereof.

81.     Paragraph 81 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies and demands strict proof of the allegations contained in Paragraph 81 to the extent they are directed at or relate to Phan.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 81, and therefore, denies the same and demands strict proof thereof.

82.     Phan admits that he submitted his resignation to BDO on or about January 9, 2024.  Phan denies the remaining allegations contained in Paragraph 82 and demands strict proof thereof.

83.     Phan admits that BDO File Exchange is a file-exchange system utilized at BDO.  Phan lacks sufficient knowledge and information to admit or deny the remaining allegations stated in Paragraph 83, and therefore denies the same.

84.     Phan admits that between December 23, 2023 and January 2, 2024, Phan obtained files using BDO File Exchange and that he has since deleted such information to BDO's

satisfaction.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 84, and therefore, denies the same and demands strict proof thereof.

85.     Phan admits that between December 23, 2023 and January 2, 2024, Phan obtained files using BDO File Exchange and that he has since deleted such information to BDO's satisfaction.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 85, and therefore, denies the same and demands strict proof thereof.

86.     Phan lacks knowledge and information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 86, and therefore, denies the same and demands strict proof thereof.  Phan denies the allegations contained in the second sentence of Paragraph 86 and demands strict proof thereof.

87.     Phan denies the allegations contained in the Paragraph 87 and demands strict proof thereof.

88.     Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 88, and therefore, denies the same and demands strict proof thereof.

89.     Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 89, and therefore, denies the same and demands strict proof thereof.

90.     Phan admits that he had a meeting scheduled with BDO on Microsoft Teams on January 12, 2024.  Phan lacks sufficient knowledge and information to admit or deny the allegations stated in Paragraph 90, and therefore denies the same and demands strict proof thereof.

91.     Phan admits that Plaintiff sent Phan a letter on January 12, 2024, to which Phan responded and scheduled a call for January 13, 2024.  Phan lacks sufficient knowledge and

information to admit or deny the remaining allegations stated in Paragraph 91, and therefore denies the same.

92.     Phan admits that he participated in a Zoom call on January 13, 2024, with counsel for and representatives of BDO, which was recorded.  Phan denies the remaining allegations, if any, contained in Paragraph 92.

93.     Phan admits that he provided an inventory listing of files obtained using BDO File Exchange between December 23, 2023 and January 2, 2024 and that he has since deleted such information to BDO's satisfaction.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 93, and therefore, denies the same and demands strict proof thereof.

94.     Phan admits that he participated in a Zoom call on January 13, 2024, with counsel for and representatives of BDO, which was recorded, and that during that call Phan shared the contents of his computer screen and deleted information and files as requested and to BDO's satisfaction. Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 94, and therefore, denies the same and demands strict proof thereof.

95.     Phan admits that his employment with BDO ended effective January 13, 2014. Phan denies the remaining allegations contained in Paragraph 95 and demands strict proof thereof.

96.     The allegations contained in Paragraph 96 relate to a document which speaks for itself.  Phan denies any allegations inconsistent therewith.  Phan admits that he was presented with a draft affirmation by BDO or its representatives.  Phan denies the remaining allegations contained in Paragraph 96 and demands strict proof thereof.

97.     The allegations contained in Paragraph 97 relate to a document which speaks for itself.  Phan denies any allegations inconsistent therewith.  Phan admits that he has not signed the draft affirmation presented to him by BDO or its representatives.  Phan denies the remaining allegations contained in Paragraph 97 and demands strict proof thereof.

98.     Paragraph 98 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 98 and demands strict proof thereof.

99.     Paragraph 99 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 99 and demands strict proof thereof.

100.    The allegations contained in Paragraph 100 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 100, and therefore, denies the same.

101.    The allegations contained in Paragraph 101 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 101, and therefore, denies the same

102.    The allegations contained in Paragraph 102 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 102, and therefore, denies the same.

103.    The allegations contained in Paragraph 103 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan admits that O'Brien is employed by Ankura but otherwise lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 103, and therefore, denies the same.

104.    The allegations contained in Paragraph 104 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 104, and therefore, denies the same.

105.    The allegations contained in Paragraph 105 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 105, and therefore, denies the same.

106.    The allegations contained in Paragraph 106 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 106, and therefore, denies the same.

107.    The allegations contained in Paragraph 107 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 107, and therefore, denies the same.

108.    The allegations contained in Paragraph 108 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response

is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 108, and therefore, denies the same.

109.    The allegations contained in Paragraph 109 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan admits that the BDO Healthcare TAS practice was authorized to use BDO TAS Sharefile.com data rooms but otherwise lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 109, and therefore, denies the same.

110.    The allegations contained in Paragraph 110 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan admits that Bradey is employed by Ankura but otherwise lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 110, and therefore, denies the same.

111.    The allegations contained in Paragraph 111 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 111, and therefore, denies the same.

112.    The allegations contained in Paragraph 112 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 112, and therefore, denies the same.

113.    The allegations contained in Paragraph 113 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response

is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 113, and therefore, denies the same and demands strict proof thereof.

114.    The allegations contained in Paragraph 114 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 114, and therefore, denies the same.

115.    The allegations contained in Paragraph 115 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 115, and therefore, denies the same.

116.    The allegations contained in Paragraph 116 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 116, and therefore, denies the same.

117.    The allegations contained in Paragraph 117 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 117, and therefore, denies the same.

118.    The allegations contained in Paragraph 118 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 118, and therefore, denies the same.

119.    The allegations contained in Paragraph 119 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan admits that Bradey and Thomas were members of the BDO Healthcare TAS practice and had permission to use a BDO TAS Sharefile.com data room but otherwise lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 119, and therefore, denies the same.

120.    The allegations contained in Paragraph 120 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 120, and therefore, denies the same.

121.    The allegations contained in Paragraph 121 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 121, and therefore, denies the same.

122.    The allegations contained in Paragraph 122 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 122, and therefore, denies the same.

123.    The allegations contained in Paragraph 123 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 123, and therefore, denies the same.

124.     The allegations contained in Paragraph 124 do not relate or pertain to Phan, as they relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 124, and therefore, denies the same.

125.     Paragraph 125 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 125, as they relate to actions of others.  Phan, therefore, denies the allegations contained in Paragraph 125 and demands strict proof thereof.

126.     Phan admits that he, O'Brien, Bradey and Thomas are currently employed by Ankura.  Phan denies the remaining allegations contained in Paragraph 126 and demands strict proof thereof.

### COUNT I
### (Misappropriation of Trade Secrets – Defend Trade Secrets Act Against Ankura)

127.     Phan incorporates each of the foregoing paragraphs as if fully restated herein.

128.     The allegations contained in Paragraph 128 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 128 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 128, and therefore, denies the same and demands strict proof thereof.

129.     The allegations contained in Paragraph 129 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 129 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be

required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 129, and therefore, denies the same and demands strict proof thereof.

130. The allegations contained in Paragraph 130 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required. To the extent a response is deemed to be required, Paragraph 130 states a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 130, and therefore, denies the same and demands strict proof thereof.

131. The allegations contained in Paragraph 131 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required. To the extent a response is deemed to be required, Paragraph 131 states a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 131, and therefore, denies the same and demands strict proof thereof.

132. The allegations contained in Paragraph 132 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required. To the extent a response is deemed to be required, Paragraph 132 states a legal conclusion to which no response is required. To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 132, and therefore, denies the same.

133. The allegations contained in Paragraph 133 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required. To the extent a response is deemed to be required, Paragraph 133 states a legal

conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 133, and therefore, denies the same.

134.    The allegations contained in Paragraph 134 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 134 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 134, and therefore, denies the same.

135.    The allegations contained in Paragraph 135 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 135 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 135, and therefore, denies the same and demands strict proof thereof.

136.    The allegations contained in Paragraph 136 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 136 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 136, and therefore, denies the same and demands strict proof thereof.

137.    Phan denies that BDO is entitled to a jury trial in this action.  The remaining allegations contained in Paragraph 137 state a legal conclusion to which no response is required.

To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 137 and demands strict proof thereof.

### COUNT II
### (Misappropriation of Trade Secrets – Virginia Uniform Trade Secrets Act ("VUTSA") Against Ankura)

138.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

139.    The allegations contained in Paragraph 139 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 139 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 139, and therefore, denies the same and demands strict proof thereof.

140.    The allegations contained in Paragraph 140 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 140 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 140, and therefore, denies the same and demands strict proof thereof.

141.    The allegations contained in Paragraph 141 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 141 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 141, and therefore, denies the same and demands strict proof thereof.

142.    The allegations contained in Paragraph 142 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 142 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 142, and therefore, denies the same.

143.    The allegations contained in Paragraph 143 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 143 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 143, and therefore, denies the same and demands strict proof thereof.

144.    The allegations contained in Paragraph 144 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 144 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 144, and therefore, denies the same and demands strict proof thereof.

145.    The allegations contained in Paragraph 145 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 145 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be

required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 145, and therefore, denies the same and demands strict proof thereof.

146.    The allegations contained in Paragraph 146 do not relate or pertain to Phan, as they are directed at another party and relate to actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Paragraph 146 states a legal conclusion to which no response is required.  To the extent any further response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 146, and therefore, denies the same and demands strict proof thereof.

147.    Phan denies that BDO is entitled to a jury trial in this action.  The remaining allegations contained in Paragraph 147 state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 147 and demands strict proof thereof.

### COUNT III
### (Tortious Interference with Phan's Employment Agreement Against Ankura and Lavin)

148.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

149.    To the extent the allegations contained in Paragraph 149 are directed at or relate to Phan, Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023. Such documents speak for themselves, and Phan denies any allegation inconsistent therewith. Phan denies the remaining allegations contained in Paragraph 149 and demands strict proof thereof.

150.    The allegations contained in Paragraph 150 do not relate or pertain to Phan, as they relate to the knowledge or actions of others, and therefore, no response is required.  To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to

admit or deny the remaining allegations contained in Paragraph 150, and therefore, denies the same and demands strict proof thereof.

151.    To the extent the allegations contained in Paragraph 151 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 151, and therefore, denies the same and demands strict proof thereof.

152.    To the extent the allegations contained in Paragraph 152 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 152, and therefore, denies the same and demands strict proof thereof.

153.    To the extent the allegations contained in Paragraph 153 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 153, and therefore, denies the same and demands strict proof thereof.

154.    Phan denies that BDO is entitled to a jury trial in this action.  The remaining allegations contained in Paragraph 154 state a legal conclusion to which no response is required. To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 154 and demands strict proof thereof.

## COUNT IV
### (In the Alternative, Tortious Interference with Phan's Employment Agreement Against Ankura and Lavin Pursuant to Tenn. Code Ann. § 47-50-109)

155.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

156.    To the extent the allegations contained in Paragraph 156 are directed at or relate to Phan, Phan admits that he is a party to the Partner/Principal Employment Agreement, effective

July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023. Such documents speak for themselves, and Phan denies any allegation inconsistent therewith. Phan denies the remaining allegations contained in Paragraph 156 and demands strict proof thereof.

157. The allegations contained in Paragraph 157 do not relate or pertain to Phan, as they relate to the knowledge or actions of others, and therefore, no response is required. To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 157, and therefore, denies the same and demands strict proof thereof.

158. To the extent the allegations contained in Paragraph 158 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof. Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 158, and therefore, denies the same and demands strict proof thereof.

159. To the extent the allegations contained in Paragraph 159 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof. Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 159, and therefore, denies the same and demands strict proof thereof.

160. To the extent the allegations contained in Paragraph 160 are directed at or relate to Phan, Paragraph 160 states a legal conclusion to which no response is required. To the extent a response is deemed to be required, Phan denies such allegations.

161. Phan denies that BDO is entitled to a jury trial in this action. The remaining allegations contained in Paragraph 161 state a legal conclusion to which no response is required.

To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 161 and demands strict proof thereof.

## COUNT V
### (Unjust Enrichment Against Ankura and Lavin)

162.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

163.    To the extent the allegations contained in Paragraph 163 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof. Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 163, and therefore, denies the same and demands strict proof thereof.

164.    To the extent the allegations contained in Paragraph 164 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof. Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 164, and therefore, denies the same and demands strict proof thereof.

165.    Phan denies the allegations contained in Paragraph 165 and demands strict proof thereof.

166.    The allegations contained in Paragraph 166 do not relate or pertain to Phan, as they are directed at another party, and therefore, no response is required. To the extent a response is deemed to be required, Phan lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 166, and therefore, denies the same and demands strict proof thereof.

167.    Phan admits that he, Beauplan, Bradey, Gentry, Gupta, Mixon, O'Brien, and Thomas are employed by Ankura in Ankura's transaction advisory services practice and that Phan currently leads that practice. Phan denies the remaining allegations, if any, contained in Paragraph 167, and demands strict proof thereof.

168.     Paragraph 168 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 168 to the extent they relate to Phan and demands strict proof thereof.

169.     Phan denies that BDO is entitled to a jury trial in this action.  The remaining allegations contained in Paragraph 169 state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the remaining allegations contained in Paragraph 169 and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 169, and therefore, denies the same.

**COUNT VI**
**(Breach of Contract – Employment Agreement Against Phan)**

170.     Phan incorporates each of the foregoing paragraphs as if fully restated herein.

171.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith and demands strict proof thereof.

172.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith and demands strict proof thereof.

173.     Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith and demands strict proof thereof.

174.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith and demands strict proof thereof.

175.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith and demands strict proof thereof.

176.    Phan denies the allegations contained in Paragraph 176 and demands strict proof thereof.

177.    Phan denies the allegations contained in Paragraph 177 and demands strict proof thereof.

178.    Phan denies the allegations contained in Paragraph 178 and demands strict proof thereof.

179.    Paragraph 179 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 179 and demands strict proof thereof.

180.    Phan denies that BDO is entitled to any of the relief sought in this action.  In further response, the allegations contained in Paragraph 180 state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 180 and demands strict proof thereof.

## COUNT VII
### (Breach of Fiduciary Duty Against Phan)

181.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

182.    Phan admits that he is a party to the Partner/Principal Employment Agreement, effective July 1, 2023, and the First Amendment to Employment Agreement, executed on August 22, 2023.  Such documents speak for themselves, and Phan denies any allegation inconsistent therewith and demands strict proof thereof.

183.    Paragraph 183 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 183 and demands strict proof thereof.

184.    Paragraph 184 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 184 and demands strict proof thereof.

185.    Paragraph 185 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 185 and demands strict proof thereof.

186.    Paragraph 186 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 186 and demands strict proof thereof.

187.    Paragraph 187 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 187 and demands strict proof thereof.

188.    Phan denies that BDO is entitled to any of the relief sought in this action.  In further response, the allegations contained in Paragraph 188 state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 188 and demands strict proof thereof.

## COUNT VIII
### (Unjust Enrichment Against Phan)

189.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

190.    Phan denies the allegations contained in Paragraph 190 and demands strict proof thereof.

191.    Paragraph 191 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 191 and demands strict proof thereof.

192.    Phan denies that BDO is entitled to any of the relief sought in this action.   In further response, the allegations contained in Paragraph 192 state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 192 and demands strict proof thereof.

## COUNT IX
### (Aiding and Abetting a Breach of Fiduciary Duty Against Lavin and Ankura)

193.    Phan incorporates each of the foregoing paragraphs as if fully restated herein.

194.    To the extent the allegations contained in Paragraph 194 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 194, and therefore, denies the same and demands strict proof thereof.

195.    To the extent the allegations contained in Paragraph 195 are directed at or relate to Phan, Phan denies such allegations and demands strict proof thereof.  Phan lacks knowledge and information sufficient to admit or deny the remaining allegations contained in Paragraph 195, and therefore, denies the same and demands strict proof thereof.

196.    Phan denies the allegations contained in Paragraph 196 and demands strict proof thereof.

197.    Paragraph 197 states a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 197 and demands strict proof thereof.

198.    Phan denies that BDO is entitled to any of the relief sought in this action.  In further response, the allegations contained in Paragraph 198 state a legal conclusion to which no response is required.  To the extent a response is deemed to be required, Phan denies the allegations contained in Paragraph 198 and demands strict proof thereof.

## JURY DEMAND

199.    Phan denies that Plaintiff is entitled to a trial by jury in this action.

## REQUESTED RELIEF

200.    Phan denies that Plaintiff is entitled to any of the relief requested in this action, including such relief requested in paragraphs (a) through (f) thereof.

## AFFIRMATIVE AND OTHER DEFENSES

201.    Phan denies any allegation stated in the First Amended Complaint ("Complaint") not specifically admitted herein.

202.    Plaintiff's Complaint may fail, in whole or in part, for failure to state a viable cause of action against Phan upon which the relief requested may be granted.

203.    Plaintiff's Complaint may fail, in whole or in part, for failure to provide sufficient facts to state a viable cause of action against Phan upon which the relief requested may be granted.

204.    Plaintiff's Complaint fails, in whole or in part, to the extent that Plaintiff lacks standing.

205.    Phan denies that he is liable to Plaintiff in any amount for any reason.

206.    Phan denies that he breached any duty or failed to satisfy any obligation owed to Plaintiff.

207.    Plaintiff's claims are barred because Phan was not the proximate cause of any injuries or damages claimed to be suffered by Plaintiff.

208.    Plaintiff's claims are barred to the extent that Plaintiff has not alleged or cannot maintain an actual injury-in-fact, which deprives the Court of Article III jurisdiction.

209.    Plaintiff's damages, if any, were caused by the acts, negligence, or fault of other persons or entities for whom Phan is not liable or responsible.

210.    Any recovery by Plaintiff is barred to the extent that Plaintiff failed to make reasonable efforts to avoid, mitigate or reduce its alleged damages.

211.    Plaintiff's claims are barred because Plaintiff suffered no actual damage as a result of Phan's conduct.

212.    Plaintiff's claims are barred because Plaintiff suffered no damages.

213.    Plaintiff's claims may be barred and/or limited because Plaintiff's claimed damages, if any, are not recoverable as a matter of law.

214.    Plaintiff's claims are barred or limited because Plaintiff's claimed damages, if any, are uncertain and speculative.

215.    Plaintiff's claims may be barred, in whole or in part, by the doctrine of unclean hands.

216.    Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver, acquiescence, abandonment, ratification, release, laches and/or estoppel.

217.    Plaintiff's claims are barred because Plaintiff is the first breaching party.

218.     Plaintiff's claims are barred or limited due to Plaintiff's exercise of bad faith.

219.     Plaintiff's claims may be barred and/or limited by the doctrines of offset, set-off and/or accord and satisfaction.

220.     Plaintiff's claims may be barred and/or limited because Phan's Employment Agreement is unenforceable as a matter of law.

221.     Plaintiff's claims are barred because Plaintiff procured Phan's Employment Agreement by fraud, deceit, misrepresentations and/or material omissions.

222.     Plaintiff's claims are barred due to Plaintiff's own fraud, deceit, misrepresentations and/or material omissions.

223.     Plaintiff's claims are barred or limited because Plaintiff enticed, lured, and/or induced Phan to enter into the Employment Agreement by means of false representations, false promises and/or material omissions.

224.     Plaintiff's claims are barred because Phan's Employment Agreement was procured under duress.

225.     Plaintiff's claims are barred because Phan's Employment Agreement is unenforceable due to lack of consideration.

226.     Plaintiff's claims are barred because Phan's Employment Agreement has been terminated and/or otherwise released by Plaintiff.

227.     Plaintiff's claims are barred or limited because the restrictive covenants contained in Phan's Employment Agreement, including but not limited to the non-solicitation provision, is unenforceable as a matter of law.

228.     Plaintiff's claims are inequitable and will result in the unjust enrichment of Plaintiff.

229.     Phan will rely upon all other defenses that are revealed by further investigation, discovery or the presentation of evidence and reserves the right to file an amended answer or other appropriate pleading as permitted by this Court.

WHEREFORE, Phuoc Vin Phan respectfully requests that the Court (i) dismiss Plaintiff's First Amended Complaint and the claims alleged against him with prejudice, (ii) award Phan his costs and expenses incurred, including reasonable attorneys' fees, and (iii) grant Phan any further relief the Court deems appropriate.

## COUNTERCLAIM

Phan states the following for his Counterclaim against BDO USA, P.C. ("Plaintiff" or "BDO"):

## PRELIMINARY STATEMENT

1.     BDO's lawsuit against Phan is only the latest in a series of lawsuits brought by BDO against former employees who dared to exercise their right to leave the hostile and distrustful work environment at BDO and seek employment elsewhere. Indeed, many partners have been unexpectedly terminated or left without explanation, contributing to many other partners and employees leaving BDO for more stable and favorable employment. Rather than attempt to retain employees by working to improve its deteriorating and hostile culture – characterized by well-placed distrust over management's intentions and the direction of the firm – BDO's only retention strategy appears to be comprised entirely of intimidation and litigation. By filing this lawsuit, BDO now seeks to falsely represent itself as a victim, when it is anything but. By this counterclaim, Phan seeks to hold BDO to account for its false promises and improper conduct.

2.     Phan was an employee of BDO from approximately April 15, 2019 until January 13, 2024. He was employed as the National Practice Leader of BDO's Healthcare Transaction Advisory Services practice and worked out of BDO's Nashville, Tennessee office.

3.      As the leader of the Healthcare Transaction Advisory Services practice, Phan took pride in his performance and the group's accomplishments. Over the years and through his last day at BDO, he continued to perform and provide quality client service, even though BDO repeatedly failed to live up to the promises it made to Phan and his colleagues.

4.      After enduring years of unfulfilled promises and a culture that was increasingly hostile towards its own employees, Phan decided to explore alternative employment options at other professional services firms – he interviewed with no fewer than three firms, including Ankura.  Despite the fact that exploring better employment opportunities is something employees across the country do every day, and something that Phan was permitted to do under the terms of his employment agreement, BDO's response was to threaten, punish and seek vengeance.

5.      BDO sued Phan and his new employer, refused to pay his reasonable business expenses as required by the BDO Partner/Principal Employment Agreement between Phan and BDO (the "Employment Agreement"), and refused to honor other contractual and financial obligations owed to him. Indeed, BDO placed vengeance above client service, and ushered Phan out without coordinating any transition plans for client work (only to then accuse Phan of improperly soliciting clients who decided they could no longer work with BDO).

6.      As part of its vendetta against Phan for having the temerity to seek employment elsewhere, BDO also seeks to punish Phan for other employees who likewise exercised their right to leave the BDO TAS practice. In its lawsuit, BDO insinuates that Phan and the other employees that left were outliers, and that but-for some kind of malfeasance they could not possibly have decided to leave BDO. This narrative is completely divorced from reality. The truth is that BDO, through its managing partner and a small circle of confidants, carefully fostered a culture of secrecy, fear, deceit, and retaliation over a period of years. They deliberately created a workplace

environment where lawsuits like this one were broadcast to the firm during periodic partner calls as an unsubtle warning to those who might seek to leave – do so at your peril knowing that BDO will come after you. There is no mystery why Phan, and so many of his colleagues, decided to leave.

7.      Indeed, around the time that Phan decided to look for other opportunities, there were several high-level departures among key employees at BDO, including the heads of BDO's other major practice groups: Stephanie Giammarco (Head of Advisory Practice), Tony Alfonso (Head of Valuation) and Timothy Mohr (Head of Forensics Practice). Other partner departures followed as well.  Each of these individuals were in positions of power at BDO and combined had decades of experience. And yet, they were seemingly gone overnight with no explanation. Upon information and belief, many non-partner employees also saw the writing on the wall, leading them to look for new employment opportunities and, ultimately, to leave as well.

8.      Ryan Guthrie, the head of Phan's own TAS practice, abruptly left the firm without notice or explanation, leading many to assume he had been terminated. This left Phan and the rest of the TAS practice group understandably troubled and concerned about the direction of BDO generally and the future of the TAS practice specifically.

9.      The anxiety surrounding the leadership turmoil at BDO was not contained within its walls – there was rank speculation within the industry about what was happening (or not happening) at BDO.[1]

10.     Compounding employee anxiety was the fact that management misled its employees during this period about the state of the firm. BDO concealed from Phan and his

---

[1] *See, e.g.*, "Some High Level Folks Have Abruptly Left BDO and No One Seems to Know Why (Update)", Going Concern, https://www.goingconcern.com/high-level-leaders-leaving-bdo/ (last accessed Sept. 16, 2024.

colleagues that the firm was negotiating a private equity transaction for over a year and, when asked directly, management obfuscated and misdirected. And with respect to Phan specifically, BDO's years-old promise to Phan that he would be converted from a Fixed Share Partner ("FSP") to Variable Share Partner ("VSP") within three years of his start date with BDO proved to be false.

11.     In short, BDO has no-one to blame but itself for Phan's departure and the departure of so many of his colleagues in TAS and other groups. Fear and threat of litigation is not an effective employee retention strategy, and BDO's mistreatment of its partners and employees (including Phan) had the predictable result – people exercising their right to seek employment elsewhere.

12.     Consistent with its pattern of retaliation and intimidation, BDO has filed multiple lawsuits against former employees for making the rational career choice to leave BDO's employ, all seemingly in an effort to impose financial hardship, threaten people's business reputations, and to negatively impact the ability of its former employees to earn a living. BDO's scheme has not stopped there, and it also seeks to tarnish the reputation of its competitors and their leadership, all in an effort to chill the ability of employees to seek alternative employment.[2] Unfortunately, Phan is merely one victim among many, and now seeks remuneration for BDO's improper and inequitable actions.

## PARTIES

13.     Phan is an individual resident of the state of Tennessee. Phan is a former employee of BDO's Nashville, Tennessee office, and a current employee of Ankura's Nashville, Tennessee office.

---

[2] *See BDO USA, P.C. v. Crandell*, Case No. 3:24-cv-00012-DJN (E.D. Va.), ECF Nos. 44-45.

14.    BDO is a professional corporation incorporated under the laws of the Commonwealth of Virginia with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

16.    This court has personal jurisdiction over BDO because BDO is a citizen of Virginia.

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because BDO is a citizen of Virginia and it consented to suit in this judicial district via contract.

## STATEMENT OF FACTS

### A.  *Phan's Employment with BDO*

18.    Phan was hired by BDO's predecessor, BDO USA LLP in April 2019 as a FSP. As part of his employment with BDO, Phan entered into the Employment Agreement with BDO on July 1, 2023, which was later amended on August 22, 2023.

19.    Additionally, Phan entered into an Amended and Restated Partnership Agreement with BDO USA, LLP effective as of April 9, 2019 (the "Partnership Agreement," attached to BDO's Complaint as Exhibit 2).

20.    Phan was hired to work in the Nashville, Tennessee office of BDO to launch the Healthcare Transaction Advisory Services practice for BDO.

21.    Throughout BDO's recruitment and hiring of Phan, BDO promised Phan that he would be converted to a VSP within three years. BDO also falsely represented to Phan that

converting from FSP to VSP was a mere formality, and that FSPs vest in the same benefits as VSPs.[3]

22.     Throughout his partnership with BDO USA LLP and subsequent employment at BDO USA, P.A. and BDO USA, P.C., Phan resided in Nashville, Tennessee. He performed most of his work in Nashville, with periodic travel to other states for work-related meetings. Phan's travel requirements decreased significantly post-COVID-19 in early spring 2020.

23.     Phan was one of BDO's top-performing partners. He was frequently recognized by Wayne Berson, BDO's Chief Executive Officer, during quarterly partner all-hands calls.

24.     During his employment with BDO, the Healthcare Transaction Advisory Services practice grew to approximately 12 U.S.-based employees and eight India-based employees, totaling approximately 20 employees.

25.     Phan also established the Transaction Advisory Services team in India for BDO by personally recruiting and hiring the leader for that team, along with several key hires. He helped expand the team from zero employees at the beginning of 2021 to over 35 employees by 2023. BDO refers to this team as "BDO RISE."

26.     In the summer of 2023, BDO requested Phan to co-lead the Southeast Transaction Advisory Services practice in addition to his role as the leader of the Healthcare Transaction Advisory Services practice, to which Phan agreed. The Southeast Transaction Advisory Services practice included BDO offices in Atlanta, Charlotte, and Florida. Phan was specifically tasked with leading the Florida Transaction Advisory Services team. Despite these expanded responsibilities, Phan did not receive any additional compensation.

---

[3] Upon information and belief, VSPs enjoy many benefits that FSPs do not, such as (i) sharing in the firm's profitability and growth through profit distributions, (ii) voting on firm matters, (iii) vesting in the firm's partner pension plan and (iv) having significantly higher compensation.

### B. *Phan was misled about converting from FSP to VSP*

27.     Throughout BDO's recruitment of Phan, and at the time that he was hired in April 2019, BDO promised Phan that he would be converted to a VSP within three years.

28.     At the beginning of 2022, BDO informed Phan that he would be converted to a VSP by October 1, 2022 because of Phan's high-level of performance and significant contributions to BDO. Phan understood this to be a clear and definite promise from BDO.

29.     At the time BDO made this promise, Phan was residing in Tennessee, and working out of BDO's Nashville, Tennessee office.

30.     In the months leading up to October 1, 2022, Phan started to inquire with his supervisors  about next steps and what paperwork would be needed to convert to VSP. Sometime in the fall of 2022, Phan sent an email to the Partner Accounting mailbox to inquire about next steps in the process of converting from FSP and VSP, but never received a response. Phan's attempts to inquire to BDO leadership were ignored.

31.     On or about September 30, 2022, Phan was informed by BDO that the firm was not converting him from FSP to VSP, falsely stating that it was in Phan's best interests. Phan was extremely disappointed by this news, as he had been relying on BDO's promise to promote him, and the benefits that would come along with it, from the moment he decided to begin employment with BDO and at all times thereafter. Phan informed BDO that he, not BDO, should be the one to decide what was in his best interests.

32.     Phan asked BDO if there were any pending transactions influencing this decision, such as a sale to a private equity firm, a merger with another firm, or a debt transaction, which prevented his conversion from FSP to VSP. In the months that followed, BDO management

including Berson, misled partners by denying that such transactions were on the table. Upon information and belief, these denials were untrue.

33.     Up to and including this time, Phan was and had been heavily recruited by other prominent advisory firms but chose to stay with BDO based solely on BDO's promise to convert him from FSP to VSP. Phan's reliance on BDO's promise to convert him from FSP to VSP caused him to forgo better job opportunities during 2022, a period noted as one of the hottest job markets in transaction advisory in recent history.

34.     On the basis of this reliance, Phan turned down more lucrative job opportunities with premier advisory firms that offered equity, something that BDO promised Phan but did not fulfill.

### C. *Mysterious partner firings and resignations create fear and anxiety throughout BDO*

35.     Upon information and belief, on or about October 17, 2022, the BDO partners received a voicemail from Berson that Stephanie Giammarco and another Advisory partner, Kristin Winford, were no longer with the firm. Upon information and belief, no reason or explanation was provided.

36.     This occurred despite that fact that Giammarco had been recently named Advisory Managing Partner, and only a few weeks prior, she had taken center stage at the annual partner conference in Orlando, Florida presenting Advisory's vision for the future.

37.     The lack of transparency around Giammarco's and Winford's departures understandably created uncertainty and fear amongst the partnership.

38.     The uncertainty and fear continued to mount inside BDO's partnership when, on or around October 28, 2022, Ryan Guthrie (Head of Transaction Advisory Services), Tony Alfonso

(Head of Valuation) and Timothy Mohr (Head of Forensics Practice) all abruptly left or were separated from BDO. Management did not share any reason or explanation for these departures.

39.     As the leader of Transaction Advisory Services, Ryan Guthrie had just delivered the best results ever for the practice. The abrupt departure of him and other highly respected partners ushered in an environment of fear and uncertainty across the partnership.

40.     Around October 2023, the head of Management Advisory Services also abruptly left the firm. This further added uncertainty within the partner group, and there were concerns about why a VSP would leave despite possessing significant equity value. Upon information and belief, the head of Management Advisory Services left due to the unhealthy culture of the firm and direction BDO was headed.

41.     A wave of departures among high-level BDO employees soon followed. Between late 2023 through January 2024, there were additional partner-level departures from well-respected employees across divisions such as audit, private equity and tax.[4]

42.     Indeed, no one seemed safe from the purge. During the week of November 12, 2023, BDO held its annual partner conference in Dallas, where Phan learned that one highly respected partner was forced to cancel his travel plans to the meeting because he was informed just a day earlier that the firm was terminating his employment.

43.     During his employment with BDO, Phan relied on certain of these individuals for client and business referrals and to help generate revenue for the firm.  Their departures created concerns about job security and the health of the firm.

---

[4] By way of example, some of these employees are suing BDO USA P.C. for wrongful termination. *See Kevin Anderson vs. BDO USA P.C.*, Case No. 1:24-cv-2421, pending in the United States Court for the District of Columbia.

### D. *BDO's conversion from a Partnership to a Corporation*

44.      Around early 2023, Phan had lunch with Steven Shill, Global Healthcare Leader and BDO Board Member, in Nashville. During this lunch, Phan shared with Shill that he was anxious about his career at BDO due to the partner firings and lack of transparency and misinformation from firm leadership. He also shared with Shill his disappointment over BDO failing to honor its years-old promise to convert him to VSP. Shill informed Phan that this decision was made to protect the FSPs from any downside risk to the unit value. Shill told Phan, "something good is about to happen, so hang tight," further misleading Phan.

45.      In early June 2023, the BDO partners received a calendar invite for a partnership call. During this call, Berson presented a plan to convert the legal structure of the firm from a partnership to a professional services corporation. Under this plan, the partnership would convert from BDO USA, LLP to BDO USA, P.A. Berson expressed that this was solely a tax mitigation strategy.

46.      On that same call, several partners asked whether this plan had to do with a private equity or other kind of transaction. BDO leadership said the conversion was purely for purposes of reducing partner income taxes and that there was no private equity or any related transaction on the table, further misleading Phan and the partnership.

47.      As part of the conversion, many partners expressed concern about changing their titles from "Partner" to "Principal." Leadership informed the partnership that they could keep the "Partner" titles. This later proved to be another falsehood, as once the conversion occurred on or about July 1, 2023, the former partnership was told they were required to refer to themselves as "Principals" only.

48.     In the months leading up to the ESOP transaction, Phan was pressured to inflate revenue to increase the firm's valuation for the transaction by manipulating and/or misattributing client "Credits."  Credits are either prepayments (e.g., retainer amounts) or amounts paid more than the actual worked performed that either must be refunded to the client or applied against future work. Phan was improperly pressured to recognize Credits as revenue to artificially boost revenue numbers. This is particularly troubling given that BDO serves as the independent auditor of many public and private companies.

49.     On or about August 3, 2023, BDO held a partnership call where leadership presented the ESOP transaction, whereby the partners would sell 42% of firm equity to an ESOP.

50.     On the call, Berson explained that the valuation of the firm for the ESOP deal was based on trailing twelve-months performance and a "very conservative" growth projection. However, given the nature and methods of historical organic growth of the firm, there were legitimate questions about the basis and validity of the projections. Those questions went unanswered.

51.     Only Berson and BDO's Board of Directors, all of whom stood to significantly benefit personally from the ESOP transaction, had input into the projections and assumptions that drove the valuation for the ESOP transaction.

52.     On the same August 3rd partnership call, Berson informed the partnership that there would be a meeting in Orlando, Florida the week of August 9, 2023, to vote on the ESOP transaction, giving the partners only one week to evaluate the personal and professional implications of the transaction.

53.     At the Orlando meeting, despite prior representations that private equity was not involved, representatives from the involved investment bank and private equity lender thanked Berson personally for partnering with them over the last 15 months to complete the transaction.

54.     Upon information and belief, BDO had misrepresented to their partnership the purpose of the ESOP transaction and corporate conversion. Over the span of two years, Berson and BDO leadership covertly hatched a scheme to enrich themselves at the expense of their partners and employees by mortgaging the future of the firm for their sole personal benefit. Upon information and belief, Berson personally collected many tens of millions of dollars from the transaction.[5]

55.     During the meeting in Orlando, partners expressed confusion and concern about the impact of choosing not to vote "yes" on the transaction and how such a vote would impact their jobs and what monetary distributions they would be entitled to, if any. Upon information and belief, management purposefully refused to allay those concerns in order to foster fear and confusion in hopes that would help it generate the "yes" votes they desired. Upon information and belief, many partners, including Phan, voted "yes" for fear of losing their jobs and/or not being able to receive any distributions following the transaction. During a conversation at the Orlando meeting between Phan and Patrick Donoghue, a senior member of BDO, Donoghue expressed his own concerns that the transaction would have a detrimental impact on BDO. Specifically,

---

[5] *See, e.g.,* "Let's Speculate Wildly About Why All the BDO USA Partners Are Getting Together for a Secret Meeting in Florida (UPDATE)," GOING CONCERN, https://www.goingconcern.com/lets-speculate-wildly-about-why-all-the-bdo-usa-partners-are-getting-together-for-a-secret-meeting-in-florida/, (last accessed Sept. 16, 2024) (estimating Berson collected between twenty-five to thirty million dollars from the transaction) *and* "Lawsuit Counterclaim by an Ex-Partner Accuses BDO of Shady Behavior Around the ESOP, PE Deal, and Corporation Conversion," GOING CONCERN, https://www.goingconcern.com/lawsuit-counterclaim-by-an-ex-partner-accuses-bdo-of-shady-behavior-around-the-esop-pe-deal-and-corporation-conversion/ (last accessed Sept. 16, 2024).

Donoghue expressed to Phan that he feared that the transaction would result in a firm that failed to properly incentivize and retain talent. Phan recalls Donoghue going so far as to describe the new structure as akin to "communism" and recalls Donoghue expressing the opinion that any employees with the talent and ability to do so should seek to leave what he feared would become a "mediocre" firm.

56.     Upon information and belief, BDO delayed the retirement of partners that they knew would vote for the ESOP deal, forced the retirement of (or terminated) partners who would not vote for the ESOP deal, and did not convert a number of FSPs (including Phan) who were in line to convert to VSP to avoid diluting the distribution pool available to the existing VSPs.

57.     Phan expressed concerns about the ESOP deal to Eskander Yavar, BDO Advisory Managing Principal in an email on August 6, 2023. Specifically, Phan was concerned about the financial impact of the transaction and the firm's ability to invest in growing and developing the team given the massive debt that would result from the ESOP.

58.     Other partners, including Chad Rash, Transaction Advisory Services Principal, also expressed similar concerns to BDO leadership and requested information to help allay those concerns. The requests for transparency and information went unanswered.

59.     On or about June 10, 2023, BDO presented Phan with a new employment agreement, giving him less than 10 business days to review and execute. The new agreement was materially less favorable than the prior agreement as it, among other things, changed Phan's status from a K-1 partner to an at-will W-2 employee (which affected his income) and reduced his severance period

60.     Following execution, BDO confirmed to Phan that his compensation was being significantly reduced to account for a change in status from a K-1 partner to W-2. As Phan would soon learn, this change in employee status would also affect his benefits.

61.     Further, at the time of the ESOP transaction, Phan held fixed share units in the partnership. Had BDO converted Phan to a VSP as promised on October 1, 2022, the value of his variable units would have been approximately 13x more than they were valued at as an FSP. Upon information and belief, BDO's failure to honor its promise to convert Phan to VSP amount to an approximate loss of over $850,000.00 plus a significantly decreased rollover equity value.

### E.   The mounting tension and fear of partner firings leads Phan to resign.

62.     The unexplained partner departures and terminations continued through 2023 and into early 2024. After Ryan Guthrie separated from BDO, the previous Transaction Advisory Services leader, Patrick Donoghue, re-assumed that role. Based on conversations with Donoghue, Phan learned that Donoghue wanted to reduce US-based headcount as much as possible so that more work could be shipped to cheaper offshore resources in India. This led Phan to further worry about his ability to sustain the growth of the practice, ensure high quality client service and continue to have job security at BDO. The growing lack of trust in BDO leadership, unrealistic revenue targets and constant pressure to reduce staff led to Phan intensifying his job search in late fall of 2023. He ultimately resigned on or about January 9, 2024.

63.     Upon formally resigning, Phan prepared a detailed transition plan for client work, including: (i) a list of all Healthcare Transaction Advisory Services clients, (ii) a list of current engagements, (iii) the status of each engagement, fees incurred to date, and billing status, and (iv) contact information for each client that he provided to BDO for BDO's use in the transition.

64.     Phan offered to send client introductions to any principals designated by Donoghue to ensure a smooth and orderly transition of client engagements.

65.     Phan successfully completed all active projects prior to resignation, with only one project requiring significant follow-up. However, BDO refused to allow Phan to be involved in the follow-up despite repeated requests by the client. Upon information and belief, the client's requests were never resolved because Phan was not granted permission to support the client by answering their questions.

66.     BDO did not attempt to retain or to arrange any transition plans with other employees who resigned. Instead, BDO and Donoghue engaged in a campaign of intimidation characterized by threats of lawsuits. And in a number of cases BDO nearly ensured that there would be client disruption because it refused to allow employees to stay on to transition clients during their resignation notice periods.

### F.  Promissory Note Owed to Phan

67.     Following BDO's conversion from a partnership to a corporation, Phan entered a promissory note with BDO dated July 1, 2023.

68.     To date, BDO owes Phan $39,997 pursuant to the Promissory Note. BDO has refused to pay Phan the $39,997 owed under the Promissory Note.

69.     In a letter dated May 24, 2024, counsel for Phan requested the amounts owed him, but BDO has refused to pay him.

### G.  Reimbursable Expenses Owed to Phan

70.     Pursuant to Section 7(a) of the Employment Agreement, BDO agreed to pay Phan "any unreimbursed business expenses incurred through [his] last day of employment".

71.     Prior to his departure, Phan submitted a request for reimbursement of business expenses for a total amount of $8,127.77. To date, BDO has refused to reimburse Phan the $8,127.77.

72.     In a letter dated May 24, 2024, counsel for Phan requested the amounts owed him, but BDO has refused to reimburse Phan for these ordinary business expenses. Instead, BDO has made an unsubstantiated claim that the expenses – which were submitted in the normal course – are somehow "improper." This is yet another example of BDO's insatiable appetite for vengeance and retaliation.

## COUNT I
## BREACH OF CONTRACT

73.     Phan incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

74.     Pursuant to Sections 5.1, 6.1, and 12.1 of the Partnership Agreement, BDO has the obligation to pay Phan his share of the profits and losses of the company and capital upon certain triggering events.

75.     BDO executed a promissory note to Phan.

76.     Under the terms of this agreement, BDO owes the Phan $39,997 in connection with the promissory note.

77.     Similarly, under the Employment Agreement, BDO agrees to reimburse Phan for reasonable expenses as allowed under Section 7(a) of the agreement.

78.     Phan submitted a request for reimbursement under the Employment Agreement for $8,127.77, which, upon information and belief, were approved internally by BDO.

79.     BDO has refused to pay the amount owed to Phan, incorrectly alleging that certain expenses relate to "Ankura referral sources" and were incorrectly submitted.

80.   To date, BDO has not reimbursed Phan for these business expenses.

81.   BDO's failure to pay the amounts owing under the Partnership Agreement, the Promissory Note, and the Employment Agreement constitute breaches of contract.

**COUNT II**
**UNJUST ENRICHMENT**
**(In the Alternative)**

82.   Phan incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

83.   As a partner of BDO at the time of his employment, Phan conferred a benefit to BDO, contributing to various profits to BDO during from April 15, 2019 through July 1, 2023, at which time BDO converted to a corporation.

84.   BDO was aware of the profits it received as a result of Phan's employment and its obligations to pay out partners per the terms of the Partnership Agreement.

85.   BDO accepted this benefit without repaying Phan the money owed under the Promissory Note.

86.   Similarly, BDO enjoyed the benefit of Phan's employment, and understood that as a BDO employee, he was entitled to reimbursement of certain expenses.

87.   Phan submitted a request for reimbursement to BDO, but BDO did not repay Phan's expenses.

88.   It would be unjust for BDO to retain the benefit of Phan's employment, and the contributions he made to BDO's profits, without payment of the value thereof.

89.   Phan has been damaged as a direct and proximate result of BDO's refusal to pay Phan amounts owed to him under the Promissory Note and reimbursement of expenses, entitling Phan to damages in an amount at a minimum of $39,997 plus $8,127.77.

## COUNT III
## PROMISSORY ESTOPPEL
### (Tennessee Law)

90.     Phan incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

91.     Phan, in consideration of BDO's explicit promise to convert Phan from FSP to VSP by October 1, 2022, reasonably relied to his detriment BDO's promises to honor this promise, which influenced his decision to join BDO, to remain with BDO, and to forgo other lucrative job opportunities during a highly favorable job market.

92.     Phan also relied on this promise in determining the value of his fixed share units that would convert to variable units, which are valued significantly higher, during his employment with BDO.

93.     Phan acted reasonably and justifiably in reliance on the promises made by BDO. As a result of BDO's failure to convert Phan from an FSP to a VSP on October 1, 2022—3 years after Phan started his job—Phan has suffered a substantial economic loss in reliance of BDO's promise.

94.     Specifically, Phan suffered financial detriment because of BDO's failure to convert him to VSP. His units were significantly undervalued, resulting in a loss of over $850,000 and decreased equity rollover value.

95.     Additionally, Phan missed out on better job opportunities and the associated benefits.

96.     By virtue of promissory estoppel, BDO is liable for damages resulting in loss wages and distribution loss.

## PRAYER FOR RELIEF

WHEREFORE, Phuoc Vin Phan respectfully requests that the Court:

(i)    dismiss the First Amended Complaint and the claims alleged against him with prejudice;

(ii)    enter judgment in favor of Phan and against BDO on all of BDO's claims;

(iii)    enter judgment in favor of Phan and against BDO on his Counterclaim in the amount of not less than $900,000.00, and order the following relief as allowed by law:

    (a)    actual economic damages;

    (b)    compensatory damages;

    (c)    pre-judgment and post-judgment interest at the highest lawful rate; and

    (d)    an award costs and expenses incurred, including reasonable attorneys' fees, in defending and prosecuting this action; and

(iv)    such other and further relief as the Court deems just and proper.

Dated:  September 16, 2024          Respectfully submitted,

PHUOC VIN PHAN

By Counsel

 /s/  Elizabeth Scott Turner
James C. Cosby, Esq. (VSB No. 25992)
J. Brandon Sieg, Esq. (VSB No. 84446)
Elizabeth Scott Turner, Esq. (VSB No. 88056)
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile:  (804) 237-0250
Email:  jcosby@ohaganmeyer.com
Email:  bsieg@ohaganmeyer.com
Email:  eturner@ohaganmeyer.com

Jonathan S. Sack, Esq. (admitted *pro hac vice*)
Queenie Paniagua, Esq. (admitted *pro hac vice*)
Sasha Pemberton, Esq.
SACK & SACK, LLP
70 East 55th Street, 10th Floor
New York, New York 10022
Telephone: (212) 702-9000
Facsimile:  (212) 702-9702
Email:  jsack@sackandsack.com
Email:  qpaniagua@sackandsack.com
Email:  spemberton@sackandsack.com

*Counsel for Phuoc Vin Phan*