UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BDO USA, P.C.,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        Case No. 3:24-cv-179-HEH
                                        )
ANKURA CONSULTING GROUP, LLC,           )
et al.,                                 )
                                        )
            Defendants.                 )

MEMORANDUM OPINION
(Resolving Motions to Dismiss and Discovery Dispute)

THIS MATTER is before the Court on a Motion to Dismiss for Lack of Personal

Jurisdiction (ECF No. 61) filed by Defendant Kevin Lavin ("Lavin") on September 13,

2024, a Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 63), filed by

Defendant/Counterclaim Plaintiff Ankura Consulting Group, LLC ("Ankura") on

September 16, 2024, and a Partial Motion to Dismiss Phuoc Vin Phan's Promissory

Estoppel Counterclaim (ECF No. 68) filed by Plaintiff BDO USA, P.C. ("BDO") on

October 16, 2024.[1]  The parties filed memoranda in support of their respective positions,

and the Court held a hearing on March 14, 2025.  The parties then filed a Joint Statement

Regarding Discovery Dispute (ECF No. 106) pertaining to matters discussed during the

Motions hearing.  The Court resolves the motions and the discovery dispute as follows.

---

[1] Ankura and Lavin each also filed a Motion for Protective Order Staying Discovery pending the
resolution of Defendants' Motions to Dismiss.  (ECF Nos. 47, 77.)  Because the Court resolves
the Motions to Dismiss in this Memorandum Opinion and corresponding Order, the Motions for
Protective Orders Staying Discovery will be denied as moot.

## I. BACKGROUND

### A. Factual Background

BDO is a Virginia professional corporation that provides assurance, tax, and financial advisory services to clients of various industries nationwide. (Am. Compl. at 3–55.) BDO is incorporated in the Commonwealth of Virginia and its principal place of business is in Illinois. (*Id.*) Defendant Phan worked for BDO in its Nashville, Tennessee office as the National Practice Leader for BDO's Healthcare Transaction Advisory Services ("TAS") practice between May 13, 2019, and January 12, 2024. (*Id.* at 3–6.) Phan was responsible for the management and oversight of BDO's Healthcare TAS practice and its employees. (*Id.*)

When Phan initially joined BDO in the spring of 2019, he entered as a Fixed Share Partner ("FSP") of BDO USA, LLP—BDO's predecessor. (Am. Compl. at 6.) At that time, Phan entered into an Amended and Restated Partnership Agreement with BDO USA, LLP. (Counterclaim at 44, ECF No. 65.) When he was first brought on, agents of BDO USA, LLP promised Phan that he would be converted from an FSP to a Variable Share Partner ("VSP") within three (3) years of his start date, and assured Phan that converting him from FSP to VSP would be a mere formality. (*Id.* at 44–45.) Although starting as an FSP, Phan received substantial compensation, benefits, access to BDO's confidential information and trade secrets, and access to BDO's clients' confidential information. (Am. Compl. at 7.)

Early in 2022, agents of BDO USA, LLP informed Phan that he would be converted to a VSP by October 1, 2022, because he was performing well. (Countercl. at

46.) Sometime in the fall of 2022, Phan sent an email to BDO's Partner Accounting mailbox to inquire about next steps in the process of converting from FSP to VSP, but he never received a response. (*Id.*) On or about September 30, 2022, Phan was informed that the firm was not converting him from an FSP to an VSP, and that this would be in his best interest. (*Id.*) Up to and including at this time, Phan was being recruited by other prominent advisory firms but he chose to stay with BDO based solely on its promise to convert him from an FSP to an VSP, resulting in Phan forgoing more lucrative job opportunities. (*Id.* at 47.)

Several months later, in 2023, Phan had lunch in Nashville with Steven Shill, Global Healthcare Leader and a BDO Board Member. (*Id.* at 49.) Shill informed Phan that the decision to keep Phan an FSP was made to protect him and other FSPs from any downside risk. (*Id.*) Shill also assured Phan that "something good is about to happen, so hang tight." (*Id.*)

On July 1, 2023, BDO USA, LLP converted to a Delaware professional corporation, which became BDO. (Am. Compl. at 7.) Phan entered into a Partner/Principal Employment Agreement with BDO that became effective that same day, July 1, 2023 ("Employment Agreement," ECF No. 55-1). Just under two (2) months later, on August 30, 2023, BDO transferred its jurisdiction of formation from Delaware to Virginia. (Am. Compl. at 7.)

Both BDO's partners and employees have access to company trade secrets and confidential information in order to provide services and maintain client relationships. To protect this confidential information, BDO required senior employees, such as

3

Defendant Phan, to enter into employment agreements which contain confidentiality

provisions. Both Phan's original partnership agreement with BDO and his July 1, 2023

Employment Agreement contained restrictive covenants, prohibiting Phan from

disclosing BDO's confidential information or the confidential information of BDO's

clients. (*Id.* at 6–8.) In addition, both Phan's original partnership agreement and his

Employment Agreement contained a non-solicitation covenant which stated that, during

his employment and for two (2) years thereafter, he would not "solicit, lure away, or

cause" any of BDO's employees with whom he had contact to leave BDO's employ.

(*Id.*; Employment Agreement at 5.)

On August 22, 2023, Phan entered into another agreement with BDO titled the

First Amendment. (Am. Compl. at 9.) This agreement modified the governing law,

venue, and jurisdiction provisions in the Employment Agreement as follows:

> This Agreement will be governed by the laws of the State of Virginia,
> irrespective of the residence of the parties. Employee agrees to and hereby
> does submit to venue and jurisdiction solely before any state or federal court
> in Virginia, and Employee hereby waives any right to raise the questions of
> jurisdiction and venue in any action that [BDO] may bring. Employee agrees
> to accept process in any such action. Note: this paragraph shall not apply to
> any employee residing in California.

(The "First Amendment," ECF No. 55-1.) The First Amendment effectively set the

forum state of Phan's Employment Agreement as Virginia.

Phan was dissatisfied with BDO's decision to convert from a partnership to a

professional corporation and he did not receive as many stock options in the new

professional corporation as he wanted and believed he deserved. (Am. Compl. at 10.)

By Phan's calculations, BDO's failure to convert him to a VSP before BDO converted

organizational structures resulted in him receiving "over $850,000.00" less than he would have otherwise received, "plus a significantly decreased rollover equity value." (Countercl. at 53.)

Around August 2023, Phan began speaking with senior executives at Ankura about an opportunity to lead a TAS practice at that firm. (Am. Compl. at 10.) Ankura is a direct competitor of BDO, providing Healthcare TAS solutions similar to those offered by BDO. (*Id.* at 1–3, 6, 14.) Ankura is a limited liability company organized under the laws of Delaware with its principal place of business in New York. (*Id.* at 3.) The Chief Executive Officer ("CEO") of Ankura is Kevin Lavin, an individual domiciled in New York and one of the defendants in this case. (*Id.*)

According to the Amended Complaint, Ankura executives, including Lavin, began planning with Phan on how to steal BDO's Healthcare TAS practice, which held a value of $60 million. (Am. Compl. at 2.) Specifically, Lavin and other Ankura executives spoke with Phan about recruiting employees to leave BDO for Ankura. (*Id.*)

Phan planned to resign from BDO in early January 2024. In the months leading up to his resignation, Phan worked with Lavin to covertly solicit the departure of BDO's senior Healthcare TAS employees, allegedly in violation of Phan's non-solicitation and confidentiality provisions in his agreements with BDO. (*Id.*) Lavin personally communicated with BDO employees on telephone calls and via text and email messaging to induce them to leave BDO for Ankura despite knowledge of Phan's and other employees' agreements with BDO. (*Id.* at 14–15.) Lavin also personally extended an

offer of employment to at least two (2) of BDO's Healthcare TAS employees while they were still subject to restrictive covenants with BDO. (*Id.* at 15.)

In August 2023, Phan spoke on the phone with Byron Nickens ("Nickens"), an employee in BDO's TAS practice who reported directly to Phan. (Byron Nickens Aff., ECF No. 46-1 ¶¶ 1–4.) Phan told Nickens that Lavin "was interested in hiring the entire existing BDO Healthcare TAS group" and asked whether Nickens wanted to join Ankura as well. (*Id.* ¶ 4.) Nickens decided to pursue a position with a different firm, Embark, ultimately accepting an offer to join that firm on December 20, 2023. (*Id.* ¶ 7.) However, Phan and Nickens kept in contact.

On December 22, 2023, Phan called Nickens and shared that although Phan was still working at BDO, he planned to resign to take a job at Ankura and that he had worked out an agreement to bring the entire BDO Healthcare TAS group with him. (*Id.* ¶ 9.) Phan asked Nickens if he would join them and come to work at Ankura. (*Id.*) Nickens told Phan he "was concerned about how [he] would be able to comply with [his] post-employment obligations to BDO if the entire BDO Healthcare TAS practice group was working together at Ankura." (*Id.* ¶ 10.) Phan replied that Ankura viewed any legal costs from the hiring of the group to be like those from funding an acquisition, and that Nickens should call Lavin the next day to talk it over. (*Id.* ¶¶ 10–11.)

Nickens exchanged text messages back and forth with Lavin and the two scheduled a time to speak over the phone on December 23, 2023. (Nickens Aff. ¶¶ 14–15.) That day, Lavin called Nickens and they spoke about Ankura's growth strategy and the potential hiring of BDO's Healthcare TAS group. (*Id.* ¶ 15.) Nickens told Lavin that

he was concerned that his post-employment contractual obligations to BDO would affect his ability to perform well at Ankura. (*Id.* ¶ 16) Lavin shared with Nickens that he expected BDO to initiate legal action against Ankura for acquiring their TAS practice. (*Id.* ¶ 17) Lavin assured Nickens that in the event of a lawsuit between BDO and Ankura, Ankura would indemnify Nickens personally against any attorneys' fees, costs, or judgments. (*Id.*) At the end of the call, Lavin gave Nickens an oral job offer to work at Ankura as a Managing Director, followed by written offer of employment sent over email. (*Id.* ¶ 19; Ex. 3, ECF No. 46-1 at 10–11.).

About three (3) days later, on December 26 and 27, 2023, Nickens expressed his concerns to Phan about joining Ankura, again expressing his distress that employment at Ankura may violate his contractual obligations to BDO. (Nickens Aff. ¶¶ 20–21.) Because Nickens was noncommittal about joining Ankura, Phan rescinded Nickens' job offer. (*Id.*) On December 31, 2023, Lavin sent Nickens an email formally rescinding Ankura's offer. (*Id.*; Ex. 4, ECF No. 46-1 at 12.)

On December 29, 2023, Angela Cinefro, President of Ankura, sent Phan a "Good Leaver" checklist (the "Checklist," ECF No. 70-2). The Checklist advised Phan not to do anything unusual before he resigned, to use methods of voice communication rather than written communication, and to take notes about conversations with staff at BDO for Ankura to use "should we get into litigation." (*Id.* at 3.) The Checklist also advised Phan that he should not solicit employees to follow him to Ankura, that he should not reach out to any clients, and that he should not attempt to take any records or information from his

current employer that could be deemed confidential or trade secret information. (*Id*. at 3–4.)

On January 9, 2024, Phan resigned and informed BDO that he had taken a position at Ankura. (Am. Compl. at 10.) At the beginning of 2024, BDO's Healthcare TAS practice consisted of eleven (11) employees who reported directly to Phan. (*Id*.) Seven (7) of these employees resigned between January 5 and January 12, 2024. Most of the resigning employees were managers and had signed confidentiality and non-solicitation agreements with BDO. The departure of Phan and the seven (7) other employees was detrimental to BDO's ongoing work and its clients. (Am. Compl. at 11–15.) By mid-February 2024, Ankura hired all of the outgoing employees for its own TAS practice now led by Phan. (*Id*. at 13.)

On January 10, 2024, the day after Phan resigned, BDO discovered that Phan had taken over 12.5 gigabytes of data from BDO's secure IT system and was attempting to take an additional 1.2 gigabytes of data. (Am. Compl. at 17–18.) While BDO was closed for the holidays between December 23, 2023, and January 2, 2024, Phan used a file exchange software and his personal email address to transfer 1,715 files containing confidential company and client information from his BDO-issued laptop to a personal computer. (*Id*. at 18–19.) Upon learning about these events, BDO terminated Phan's access to the IT system, preventing the loss of the 1.2 gigabytes of additional confidential information that Phan was attempting to transfer, and immediately contacted him to schedule a meeting. (*Id*.)

Phan provided BDO with an inventory of what information he had taken and agreed to meet on a recorded video conference meeting with BDO's in-house and outside counsel on January 13, 2024. (Am. Compl. at 19.) During this video call, Phan shared the contents of his personally owned computer, and BDO's counsel supervised him while he deleted all confidential information from the provided inventory. (*Id.* at 19–20.) After the call, BDO accelerated Phan's departure from the firm by terminating his employment that same day. (*Id.* at 20.) After the call, BDO sent Phan a draft affirmation to sign, affirming that Phan was in compliance with his BDO non-solicitation restrictive covenants and that he had returned all of the confidential information that had been in his possession. (*Id.*) Phan refused to sign the affirmation. (*Id.*)

**B. Procedural Background**

On August 19, 2024, BDO filed its Amended Complaint alleging that Ankura, Lavin, and Phan, by stealing a portion of BDO's business, violated both federal and state laws. The Amended Complaint brings nine (9) counts against Defendants: Misappropriation of Trade Secrets – Defend Trade Secrets Act ("DTSA") against Ankura (Count I); Misappropriation of Trade Secrets – Virginia Uniform Trade Secrets Act ("VUTSA") against Ankura (Count II); Tortious Interference with Phan's Employment Agreement against Ankura and Lavin (Count III); In the Alternative, Tortious Interference with Phan's Employment Agreement against Ankura and Lavin, pursuant to Tenn. Code Ann. § 47-50-109 (Count IV); Unjust Enrichment against Ankura and Lavin (Count V); Breach of Contract – Employment Agreement against Phan (Count VI); Breach of Fiduciary Duty against Phan (Count VII); Unjust Enrichment against Phan

(Count VIII), and Aiding and Abetting a Breach of Fiduciary Duty against Lavin and Ankura (Count IX). (*Id.* at 25–38.)

On September 16, 2024, Phan filed an Answer and Counterclaim against BDO. (ECF No. 65.) In his Counterclaim, Phan brings claims for Breach of Contract (Count I), Unjust Enrichment (Count II), and Promissory Estoppel (Count III). (*Id.*)

According to BDO, Ankura is a large organization that employs over 1,700 professionals, maintains over 30 offices across the globe, and engages in business transactions with Virginia residents on a regular basis. (*See* ECF No. 46-3 at 2.) For example, Ankura has been registered with Virginia's State Corporation Commission to perform business within Virginia's borders on a continuing basis since June 2, 2020. (ECF No. 33 at 15.) In addition, Ankura also employs at least seven (7) full-time Virginia employees in its senior management—according to information gathered from LinkedIn, a social networking website for professionals. (*See* Ex. 1, Declaration of Julie H. McConnell, ECF No. 33-1.) Ankura also regularly targets its recruitment efforts within Virginia's borders by advertising job openings and attempting to hire new Virginia-based employees to join the company. (Ex. 2, ECF No. 33-2.) Significantly, in 2022, Ankura acquired a Virginia-based analytics firm that had more than 15 employees. (ECF No. 46-3 at 2.) Furthermore, Ankura has been retained as a financial advisor to the Special Committee of Intelsat Connect Finance S.A., a Virginia-based company, and has filed a declaration in connection with this Virginia engagement in the United States Bankruptcy Court for the Eastern District of Virginia. (ECF Nos. 46-3, 46-4, 46-5.)

## II. LEGAL STANDARD

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges

the Court's jurisdiction over the parties in a case. Under Rule 12(b)(2), a defendant

"must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the

burden of demonstrating personal jurisdiction at every stage following such a challenge."

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson*

*v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). "When a district court considers a

question of personal jurisdiction based on the contents of a complaint and supporting

affidavits, the plaintiff has the burden of making a prima facie showing in support of its

assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558

(4th Cir. 2014) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th

Cir. 2009)). In considering whether the plaintiff has met this burden, the district court

"must construe all relevant pleading allegations in the light most favorable to the

plaintiff, assume credibility, and draw the most favorable inferences for the existence of

jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)).

## III. ANALYSIS

### A. Motions to Dismiss for Lack of Personal Jurisdiction

As the United States Court of Appeals for the Fourth Circuit has stated, a federal

district court may exercise personal jurisdiction over a foreign party only if: "(1) such

jurisdiction is authorized by the long-arm statute of the state in which the district court

sits; and (2) application of the relevant long-arm statute is consistent with the Due

Process Clause of the Fourteenth Amendment." *Universal Leather, LLC*, 773 F.3d at 558

(citing *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012)). The Fourth Circuit has further explained, "'Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause,' the statutory and constitutional inquiries merge into one inquiry."[2] *Kurbanov*, 963 F.3d at 351 (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 277). Thus, a federal district court in Virginia has jurisdiction over a nonresident defendant "if the exercise of such jurisdiction comports with the strictures of constitutional due process." *Id.*

The Supreme Court of the United States has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

General jurisdiction applies only when a defendant is "essentially at home" in the forum state. *Id.* For example, for an individual, general jurisdiction applies in the state where he is domiciled, and for a corporation, it applies in the corporation's place of incorporation and its principal place of business. *Id.* at 358–359. (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Here, general jurisdiction does not apply because

---

[2] Even if the inquiries did not merge, Subsection (A)(4) of Virginia's long-arm statute, Virginia Code § 8.01-328.1, is satisfied here given that (1) Ankura and Lavin allegedly caused BDO tortious injury in Virginia, (2) Ankura's substantial business transactions with entities in Virginia, and (3) the revenue Ankura and Lavin derive from those transactions. *See supra* Part I.B.

the record does not show that Lavin is not domiciled in Virginia, or that Ankura's place of incorporation or its principal place of business are in Virginia.

However, as the Supreme Court has held, "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 359. For jurisdiction to be established under this test, the record "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Under this scenario, the forum state may exercise jurisdiction over a plaintiff's claims that "arise out of or relate to" those contacts the defendant made with the forum state. *Id.*; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

When parties agree to litigate their claims in a particular state, however, the jurisdiction analysis is simple. Indeed, the personal jurisdiction requirement "may be waived by a defendant's 'express or implied consent.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, (1982)). The Supreme Court has explained that parties can consent in advance to submit their controversies for resolution within a particular jurisdiction. *See Burger King Corp.* 471 U.S. at 473, n.14 (citing *Ins. Corp. of Ireland*, 456 U.S. at 703). Consequently, "several circuits have held that a valid forum selection clause, alone, is sufficient to confer personal jurisdiction." *ExxonMobil Oil Corp. v. Black Stone Petroleum Inc.*, 221 F. Supp. 3d 755, 763 (E.D. Va. 2016) (collecting cases); *see Consulting Eng'rs Corp.*, 561 F.3d at 281, n.11 ("[A] valid *forum*

selection clause, unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction."). In short, "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *ExxonMobil Oil Corp.*, 221 F. Supp. 3d at 763, n.8 (quoting *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001)).

Courts in this district have previously held that "non-signatories may be bound by a forum selection clause if they are so 'closely related' to the dispute such that it is 'foreseeable' that they will be bound." *Servicios Latinos, Inc. v. Gomez*, No. 2:24-cv-182, 2024 WL 4702816, at *4 (E.D. Va. Nov. 6, 2024); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018) ("Under traditional principles of contract law, non-signatories may be bound by a forum selection clause . . . if they are closely related parties."). Indeed, "[i]t is widely accepted that non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Balt., Inc.*, 11-cv-5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) (quoting *Donachy v. Intrawest U.S. Holdings, Inc., No.* 10-4038, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011)); *see Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022) ("All other circuit courts to have considered [the closely related doctrine] have recognized it in one way or another."). When determining if it is foreseeable that a non-signatory will be bound by the forum selection clause in a contract, "pure speculation" of foreseeability is typically insufficient. *See In re McGraw-Hill*, 909 F.3d at 65.

In *Meridian Bank v. Sandy Spring Bank*, the district court held that the closely related doctrine applied where a corporate defendant, Sandy Spring Bank ("SSB"), effectively conspired with bank managers and employees to violate the employment agreements they had with the plaintiff, Meridian Bank. *Meridian Bank v. Sandy Spring Bank*, No. CV 22-3951, 2023 WL 8258769, at *5–8 (E.D. Pa. Nov. 29, 2023). This scheme was sufficient for the court to find that SSB could be bound by the forum selection clause in agreements between Meridian Bank and its employees even though (1) SSB never signed those agreements between Meridian Bank and its employees; (2) SSB was not in an ownership or subsidiary relationship with any of the parties; (3) SSB was not involved in negotiations involving those agreements; and (4) SSB did not receive a direct benefit from the agreements. *Id.* at *5. Important to the court was the fact that SSB actively sought to hire the employee defendants knowing that they were then employed by Meridian Bank under the agreements that contained the forum selection clause at issue. *Id.* at *7.

The court in *Meridian Bank* then reviewed the forum selection clause language, which provided, according to the court:

> "[a]ny litigation relating to this agreement shall be brought in the federal or state courts in or for Montgomery County, Pennsylvania" or "[n]othing . . . shall prohibit Meridian from filing at State or Federal Court in relation to this Agreement . . . venue for any such Court proceeding shall be in that Federal or State Court nearest to Meridian's then headquarters and [employee][3] consents to personal jurisdiction at such forums."

---

[3] The court in this case changed the word "Manager" to "employee." *See Meridian Bank v. Sandy Spring Bank*, 2023 WL 8258769, at *7.

*Id.* Effectively reading in the defendant, "SSB," in place of "employee," the court found that this forum selection clause was broad enough to apply to the claims raised by the plaintiff against SSB. *Id.*

Similarly, in *Radian Guar. Inc. v. Bolen*, the district court held that a defendant was bound by a forum-selection clause even though it did not sign the contract at issue. 18 F. Supp. 3d 635, 639 (E.D. Pa. 2014). As summarized by that court, "Having sought to employ Bolen while knowing that she was employed by Radian under a contract with a non-competition agreement, Arch MI Services and Arch MI Holdings are sufficiently closely related to Bolen so as to foresee being bound by the forum selection clause in the Stock Grant Agreement." *Id.* at 647. In *Bolen*, the forum selection clause stated:

> The Grantee irrevocably and unconditionally (i) agrees that any legal proceeding arising out of this paragraph may be brought in the United States District Court for the Eastern District of Pennsylvania, or if such court does not have jurisdiction or will not accept jurisdiction, in any court of general jurisdiction in Philadelphia County, Pennsylvania, (ii) consents to the non-exclusive jurisdiction of such court in any such proceeding, and (iii) waives any objection to the laying of venue of any such proceeding in any such court.

*Id.* at 640. In finding that the non-signatory defendants were bound by the forum selection clause, the court effectively read those defendants into the agreement in place of "Grantee." *Id.* at 640, 647.

Here, consistent with Fourth Circuit precedent, the Court considers the complaint, affidavits, exhibits, and other similar items of the record to assure itself of personal jurisdiction. *UMG Recordings, Inc.*, 963 F.3d at 350. At this stage in the case, the record shows that Lavin and Ankura are so "closely related" to the dispute between BDO and Phan such that it was "foreseeable" that they would be bound by the forum selection

16

clause in the Employment Agreement between BDO and Phan. *See Gomez*, 2024 WL 4702816, at *4 (quoting *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000)).

The record shows that Lavin, on behalf of Ankura, was the architect and prime mover of the plan to take away BDO's Healthcare TAS practice by recruiting Phan and other senior BDO employees to join Ankura in violation of their respective agreements with BDO. (Am. Compl. at 2, 10, 14–16; Nickens Aff. ¶¶ 4–21.) By August 22, 2023, Phan had agreed to the First Amendment, setting the forum state for his Employment Agreement with BDO as Virginia. (Am. Compl. at 9.) During that same time, the Amended Complaint alleges, "Ankura, with Lavin's full participation and knowledge, began plotting in the summer of 2023 to steal BDO's Healthcare TAS practice, including to hire and use Phan to recruit other BDO employees to leave BDO and work for Ankura, notwithstanding Phan's fiduciary [and contract] obligations to BDO." (*Id.* at 10.) "Lavin and Ankura correctly knew and understood" the restrictive covenants in Phan's Employment Agreement, and were aware that Phan's Employment Agreement contained a forum selection clause. (*Id.* at 14.)

Despite knowledge of Phan's contractual obligations to BDO, Lavin worked with Phan to covertly "solicit[] at least seven of the 11 full-time employees in the Healthcare TAS practice . . . [to] join Ankura." (*Id.* at 2, 13.) According to the record, "Lavin personally communicated with then-BDO employees on telephone calls and via text and e-mail messaging to induce them to leave BDO for Ankura." (*Id.* at 14; Nickens Aff. ¶¶ 14–21.) In addition, Lavin "personally extended an offer of employment to at least two

17

(2) of BDO's Healthcare TAS employees whom he knew were and remain subject to obligations to BDO." (Am. Compl. at 15; Nickens Aff. ¶¶ 14–21.) Lavin "assured at least one BDO Healthcare TAS employee subject to obligations owed to BDO that they should not be worried about BDO initiating legal action related to Ankura stealing BDO's Healthcare TAS practice and BDO employees violating obligations to BDO because Ankura would indemnify them personally against any attorneys' fees, costs, or judgments." (Am. Compl. at 14–16; Nickens Aff. ¶ 17.)

Overall, at this point in the case the record shows that Lavin, Ankura, and Phan acted in concert to take away BDO's Healthcare TAS practice in deliberate violation of Phan's Employment Agreement. Lavin and Ankura's conduct is intertwined with Phan's alleged contract violations, rendering it reasonably foreseeable that they would become defendants alongside Phan in future litigation springing from the Employment Agreement. Lavin and Ankura knew that Phan's Employment Agreement contained a forum selection clause and it was foreseeable that they would be bound by that clause. Although Lavin states in an affidavit that he was not aware that Phan's Employment Agreement set the forum state as Virginia, the contract amendment setting Virginia as the forum state was signed by Phan and was effective before Lavin finished recruiting Phan, and had been in place for about four (4) months before Phan officially followed through on Lavin's overtures and joined Ankura. During that span of time, Lavin was actively recruiting Phan and other employees of BDO—a Virginia corporation—in blatant disregard of future litigation risks. Under these circumstances, the Court finds that the

18

forum selection clause in Phan's Employment Agreement can bind Ankura and Lavin for the purposes of this case.

The forum selection clause in the Employment Agreement, as provided in the First Amendment, states in relevant part, "Employee agrees to and hereby does submit to venue and jurisdiction solely before any state or federal court in Virginia, and Employee hereby waives any right to raise the questions of jurisdiction and venue in any action that [BDO] may bring." (ECF No. 55-1.) Because Lavin and Ankura are read into the contract in place of "Employee," Lavin and Ankura have effectively agreed to submit to jurisdiction before any federal court in Virginia and have also waived any right to question that court's jurisdiction in this case. *See Bolen*, 18 F. Supp. 3d at 647; *Meridian Bank*, 2023 WL 8258769, at *7. Consequently, the Court finds that BDO has established a prima facie case that this Court has personal jurisdiction over both Ankura and Lavin for the matters raised by BDO's Amended Complaint. *See Kurbanov*, 963 F.3d at 350. For all these reasons, the Court will deny the Motions to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 61, 63).

### B. Joint Statement Regarding Discovery Dispute

On April 3, 2025, the parties filed a Joint Statement Regarding Discovery Dispute (the "Statement," ECF No. 106). During the Motion Hearing, it appeared to the Court that, if their motions to dismiss were denied, Defendants would cooperate in jurisdictional discovery to develop the record, and it appeared that they might later move for an evidentiary hearing on personal jurisdiction. *See Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018) ("[P]laintiff[s] must

19

eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.")  Although the parties agree that the Court permitted BDO to request jurisdictional discovery material from Lavin and Ankura, they dispute whether any other discovery is appropriate.  (ECF No. 106.)  The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid the Court in deciding this dispute.  *See* E.D. Va. Loc. R. 7(J).

Primarily, BDO asks that Ankura and Lavin should be ordered to engage in full discovery as to the merits of BDO's case against Phan.  Defendants' position appears to be that *any* merits discovery from Ankura or Lavin is premature until the Court is assured that it has jurisdiction over Ankura and Lavin as defendants.

The Court disagrees with Ankura and Lavin, and it agrees with BDO.  Lavin and Ankura enjoy no protection from discovery related to BDO's claims against Phan simply because they challenge their status as defendants.  Lavin and Ankura must comply with discovery as to BDO's claims against Phan, including matters related to the merits of those claims.  In addition, Lavin and Ankura must comply with jurisdictional discovery as defendants in this case.  Consequently, the only matters for which the Court has so far limited discovery from Lavin and Ankura are those that pertain exclusively to the merits of BDO's claims against Lavin and Ankura—to the extent any material exists that falls solely in this category.  To the extent that any item or information is subject to discovery on the merits of BDO's claims against (1) both Phan and Ankura, (2) both Phan and Lavin, or (3) all three Defendants, Lavin and Ankura must produce that material.

### C. Motion to Dismiss Phan's Promissory Estoppel Claim

On October 16, 2024, BDO filed a Partial Motion to Dismiss Phuoc Vin Phan's Promissory Estoppel Counterclaim ("Motion to Dismiss Estoppel Claim," ECF No. 68.) Based on Tennessee law, Phan's promissory estoppel claim alleges that a BDO agent promised to promote Phan to a Variable Share Partner within three years of joining BDO and that Phan relied on that promise to his financial detriment. (Countercl. at 57.) BDO argues that Phan's claim fails to state a claim because (1) it does not allege fraud, which a promissory estoppel claim requires, and (2) Phan's reliance on the alleged promise was unreasonable. (ECF No. 69 at 2–3.) In opposition, Phan argues that his promissory estoppel claim should survive BDO's Motion to Dismiss, contending that BDO's promise to him was unambiguous and that he suffered substantial harm. (ECF No. 74 at 4–5.)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (internal quotation marks omitted). For a complaint to be sufficient under Rule 12(b)(6), a plaintiff must assert "[f]actual allegations" that are "enough to raise a right to relief above the speculative level" to one that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). When considering a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded allegations. *Vitol, S.A. v. Primerose Shipping Co.*,

708 F.3d 527, 539 (4th Cir. 2013). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To plead a prima facie claim for promissory estoppel under Tennessee law, a claimant must allege that: (1) a promise was made; (2) that the promise was unambiguous and not so vague as to be unenforceable; and (3) that he reasonably relied upon the promise (4) to his detriment. *Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V.*, 685 F. Supp. 3d 654, 676 (E.D. Tenn. 2023) (citing *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (discussing the elements of a promissory estoppel claim)).

BDO argues that Phan's promissory estoppel claim cannot be maintained because BDO and Phan already had an enforceable contract, that the terms of that agreement cannot be changed by promissory estoppel, and Phan's allegations do not amount to a claim for fraud. (ECF No. 69 at 6.) BDO points to language in the Amended and Restated Partnership Agreement Phan entered into with BDO USA, LLP. (ECF No. 69-2.) Under Article II, "Board of Directors," that agreement provides in relevant part:

> The Board of Directors, with input from the Chief Executive Officer and other appropriate members of executive management of the Partnership, shall also have responsibility for, and review of, the following matters to the extent not otherwise delegated to the Chief Executive Officer and/or other appropriate members of executive management of the Partnership: . . .
>
> .
>
> (b) Allocation of income to Partners, and designation of each Partner as a Fixed Share Partner or Variable Share Partner upon such Partner's admission and at any time thereafter.

(*Id.* at 16.) BDO argues that Phan's promissory estoppel claim fails as a matter of law because, as the partnership agreement apparently makes clear, the Board of Directors was

solely responsible for designating BDO partners as FSPs or VSPs. (ECF No. 69 at 7–8.) In response, Phan emphasizes that the agreement between Phan and BDO "is silent on the promise at issue in this action." (ECF No. 74 at 11.) Specifically, Phan argues that even though his partnership agreement with BDO established that the Board of Directors had the power to designate someone as a VSP, the question of "when" Phan himself would be made a VSP was not stated in the contract. (*Id.*) In addition, Phan argues that BDO's repeated promises and assurances to him made it reasonable for him to rely on the promise that he would be made a VSP within three (3) years. (*Id.* at 10–11.)

Under these circumstances, Phan alleged a prima facie claim for promissory estoppel. According to the allegations in the Counterclaim, BDO, through its agents, made a promise to Phan that if he joined the firm he would be converted from an FSP into an VSP within three years of his start date. (Countercl. at 44–46.) BDO solidified that promise early in 2022, promising that Phan would be converted to a VSP by October 1, 2022. (*Id.*) Phan first accepted employment and then remained at BDO based on these promises, rejecting more lucrative job opportunities at other firms. (*Id.* at 44–46, 57.) Phan suffered economic harm by not being converted to a VSP, including his loss of $850,000.00 and his loss of more lucrative compensation that he would have received had he accepted offers to work for other organizations. (*Id.*) On the record presently before the Court, the partnership agreement between Phan and BDO USA, LLP is not sufficient for the Court to find that Phan has failed to state a claim for promissory estoppel under Tennessee law. Consequently, the Court will deny BDO's Motion to Dismiss Estoppel Claim.

## IV. CONCLUSION

For the aforementioned reasons, the Court will deny the Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 61) filed by Defendant Lavin, the Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 63) filed by Defendant Ankura, and the Partial Motion to Dismiss Phuoc Vin Phan's Promissory Estoppel Counterclaim (ECF No. 68) filed by Plaintiff BDO. The Court will resolve the discovery dispute in the Joint Statement (ECF No. 106) as described *supra*. *See* Part III.B.

An appropriate Order will accompany this Memorandum Opinion.

_____
Henry E. Hudson
Senior United States District Judge

Date: MAy 9, 2025
Richmond, Virginia

24