IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BDO USA, P.C., )
)
    Plaintiff, )
)
v. )   Civil Action No. 3:24-cv-179-HEH
)
ANKURA CONSULTING GROUP, )
LLC, PHUOC VIN PHAN, )
and KEVIN LAVIN, )
)
    Defendants. )

**MEMORANDUM OPINION**
**(Denying Motion to Dismiss)**

THIS MATTER is before the Court on Ankura Consulting Group, LLC ("Ankura"), Phuoc Vin Phan ("Phan"), and Kevin Lavin's ("Lavin") (collectively, "Defendants"), Motion to Dismiss ("Mot. to Dismiss," ECF No. 153) the Second Amended Complaint ("SAC," ECF No. 151) filed by Plaintiff BDO USA, P.C. ("Plaintiff") for failure to state a claim. Defendants seek to dismiss in full Counts I–II, IV–VIII and X of Plaintiff's Second Amended Complaint, or, alternatively, (1) partially dismiss Counts I–II and VII as against Lavin and/or Phan, (2) partially dismiss Counts I–II, V–XI as preempted by VUTSA, and/or (3) order BDO to plead a more definitive statement with respect to Counts III and IV, pursuant to Federal Rule of Civil Procedure 12(e). (Mot. to Dismiss, ECF No. 154 at 1.)

The parties have submitted extensive memoranda in support of their respective arguments. The Court will dispense with oral argument because the facts and legal

contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. R. 7(J). For the reasons stated herein, the Court will DENY the Motion to Dismiss with respect to all counts.

## I. BACKGROUND

The Court previously discussed the background to this case in its May 9, 2025 Memorandum Opinion. (Mem. Op. May 2025, ECF No. 107 at 3–10.) For the sake of brevity, the Court will recount here only new facts relevant to this memorandum opinion which have emerged since that time or those facts which are otherwise directly relevant to this ruling.

On August 12, 2025, Plaintiff filed its Seconded Amended Complaint alleging that Ankura, Lavin, and Phan violated both federal and state laws by stealing a portion of Plaintiff's business. The Second Amended Complaint brings eleven (11) counts against Defendants: Statutory Conspiracy against Phan, Lavin, and Ankura, pursuant to Va. Code Ann. §§ 18.2-499, 18.2-500 (Count I); Conspiracy against Phan, Lavin, and Ankura under Virginia Common Law (Count II); Misappropriation of Trade Secrets – Defend Trade Secrets Act ("DTSA") against Ankura (Count III); Misappropriation of Trade Secrets – Virginia Uniform Trade Secrets Act ("VUTSA") against Ankura (Count IV); Tortious Interference with Phan's Employment Agreement against Ankura and Lavin (Count V); in the alternative, Tortious Interference with Phan's Employment Agreement against Ankura and Lavin, pursuant to Tenn. Code Ann. § 47-50-109 (Count VI); Unjust Enrichment against Ankura and Lavin (Count VII); Breach of Contract – Employment Agreement against Phan (Count VIII); Breach of Fiduciary Duty against

2

Phan (Count IX); Unjust Enrichment Against Phan (Count X); and Aiding and Abetting a Breach of Fiduciary Duty against Lavin and Ankura (Count XI). (*Id.* at 28–47.)

According to Plaintiff, Ankura has extensive commercial operations and connection to Virginia. (SAC ¶ 11.) Specifically, BDO asserts that Ankura is registered to do business in Virginia on a perpetual basis, has a registered agent, address, and phone number in Virginia, has paid corporate taxes in Virginia, owns a Virginia-based subsidiary (GreenPoint International, LLC), has solicited Virginia residents for employment and employs Virginia residents, has Virginia-based clients, and derives revenue from services related to its Virginia contacts and operations. (*Id.*) Past filings in this case feature similar claims detailing Ankura's contacts to and operations in Virginia. (*See* ECF No. 46-3 at 2; ECF No. 33 at 15; Ex. 1, "Declaration of Julie H. McConnell," ECF No. 33-1; Ex. 2, ECF No. 33-2; ECF No. 46-3 at 2; ECF Nos. 46-3, 46-4, 46-5.) The nexus of these claims to Virginia is particularly relevant to the issues raised by the Motion to Dismiss.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (internal quotations omitted). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387).

3

However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).

A court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)); *Iqbal*, 556 U.S. at 678. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

For a Rule 12(b)(6) motion, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails." *Id.* (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) (alteration in original) (internal quotations omitted).

The Court previously ruled on many of the claims made in the Second Amended Complaint in an Order granting Plaintiff's Motion for Joinder and for Leave to File Amended Complaint. (Mem. Op. Aug. 2024, ECF No. 53.) In the Memorandum Opinion accompanying that Order, the Court found that Plaintiff to met the threshold to survive a Rule 15 motion to amend. (*Id.*) "A motion to amend a pleading should only be denied as futile if a proposed amendment advances a claim or defense that is frivolous or legally deficient on its face." *Hillyard v. Warren*, No. 5:02-cv-329, 2003 WL 25904136, at *4 (E.D.N.C. July 3, 2003). "Whether a complaint fails to state a claim, and, thus, amendment would be futile is analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Raub v. Campbell*, No. 3:13-cv-328-HEH, 2014 WL 130974, at *2 (E.D. Va. Jan. 14, 2014). In turn, where the Court has already found a claim to survive a Motion to Amend in its past Order, it is likely to find similar claims alleged here to survive the present Motion to Dismiss, absent significant material change to the facts alleged.

### III. ANALYSIS

**A. Statutory Conspiracy and Misappropriation of Trade Secrets under DTSA (III) and VUTSA (IV) against Ankura, Lavin and Phan; and Breach of Fiduciary Duty Against Phan (IX) and Aiding and Abetting a Breach of Fiduciary Duty against Lavin and Ankura (XI)**

This Court previously denied a motion to dismiss the Misappropriation of Trade Secrets claims. (Mem. Op. Aug. 2024 at 11.) The Court ruled that under the standard required by a motion to dismiss, Plaintiff had already adequately alleged a claim of misappropriation of trade secrets. (*Id.* at 8–11.) However, we did not directly address

5

Defendants' argument that the VUTSA claim fails because Plaintiff failed to allege any conduct took place in Virginia. (ECF No. 156 at 12.)

"Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions." *Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998). In other words, "Virginia's choice of law rule selects the law of the state . . . wherever the effects of that act are felt." *Id.* at 522. "[T]he place of the wrong is the place the last event necessary to make an [actor] liable for an alleged tort takes place." *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (internal citations and quotations omitted). The question is thus whether "the last event necessary to make an [actor] liable" took place in Virginia. *Id.*

The clearest connection between this litigation and the Commonwealth of Virginia is a provision in the employment agreement between Plaintiff and Defendant Phan consenting to jurisdiction in Virginia. (ECF No. 14 at 8.) Plaintiff alleges that Ankura is perpetually registered to do business in Virginia, owns a Virginia-based subsidiary, employs Virginia residents, and has Virginia-based clients. (Pl.'s Resp. at 33.) Additionally, Ankura has extensive operations in and connection to Virginia. (SAC ¶ 11.) This Court has previously applied a broad definition of trade secret and previously ruled that the allegation that Defendants stole Plaintiff's files amounted to a successfully plead misappropriation of trade secrets claim. (Mem. Op. Aug. 2024 at 9–10.) In the Second Amended Complaint, Plaintiff contends that Defendants stole numerous files belonging to Plaintiff, the contents, names, locations and sizes of which Plaintiff describes. (SAC ¶ 87–128.) Since even the use of a trade secret without consent

amounts to misappropriation, and various features of this case have a strong nexus to Virginia, the Court cannot conclude at this stage that no trade secrets have been misappropriated in Virginia. *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 229 (4th Cir. 2025) (quoting 18 U.S.C. § 1839(5)). Thus, Plaintiff has succeeded in sufficiently alleging a viable VUTSA claim.

Defendants also argue that VUTSA preempts all of Plaintiff's other claims except for their DTSA claim. (Mot. to Dismiss at 20–21.) However, VUTSA does not provide "blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret." *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 660 (E.D. Va. 2002). Numerous courts within the Fourth Circuit have found that VUTSA preemption only applies where the claim is entirely predicated on the trade secrets misappropriation claim. *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 452 (E.D. Va. 2009) (collecting cases). Because the factual claims in this case go beyond misappropriation of trade secrets alone, preemption does not apply at this stage. Furthermore, because VUTSA preemption does not apply, the Court declines to dismiss Counts IX and XI, as requested by Defendants. (Mot. to Dismiss at 1, 21.)

The standards applicable under VUTSA are "nearly identical" to those under DTSA. *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 514 (E.D. Va. 2021). The Court has previously analyzed VUTSA and DTSA together, in this case and other cases. *Salomon & Ludwin, LLC v. Winters*, 741 F. Supp. 3d 398, 404 (E.D. Va. 2024), *aff'd in part, vacated in part*, 150 F.4th 268 (4th Cir. 2025). Given our past

rulings that Plaintiff has sufficiently alleged a viable DTSA claim, the Court sees no reason to require a more definite statement from Plaintiff with respect to Count III.

### B. Tortious Interference with Phan's Employment Agreement against Ankura under Virginia (V) and Tennessee Law (VI) and Breach of Contract Against Phan (VIII)

Defendants' arguments for dismissing the breach of contract claims are predicated on the contention that the contract at issue does not contain a non-solicitation provision. (Mot. to Dismiss at 8–9.) The Court has previously ruled on allegations of breach of contract in this case. (Mem. Op. Aug. 2024 at 17.) The Court has elsewhere previously declined to dismiss various counts of this action before the parties present evidence on the interpretation and contents of the contract at issue. (ECF No. 19 at 5–11; ECF No. 14 at 23 n.6; Mem. Op. Aug. 2024 at 17.) Additionally, even if the contract at issue does not bar solicitation as the Defendants contend, several Defendants have referred to the contested sections as a "non-solicitation provision." (ECF No. 19 at 5-11; ECF No. 14 at 23 n.6). The Court cannot interpret the provisions of this agreement in "a factual vacuum." *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 144 (2013). While Defendants' statements made earlier in the case are not necessarily binding, such statements cannot be discounted at this stage of the pleadings. The fact that Defendants themselves once considered the provisions at issue to bar solicitation, only to change their position at a later stage, support a finding that its terms are not "clear and unambiguous." (Mot. to Dismiss at 8–9.) Therefore, Plaintiff has adequately pleaded a breach of contract claim, and the Court declines to dismiss Count VIII.

We have also previously held that Plaintiff sufficiently pleaded the elements of tortious interference with contract under Virginia and Tennessee law. (Mem. Op. Aug. 2024 at 11–12.) We found that "the contract at issue was not terminable at will and, thus, Plaintiff is not required to allege that improper methods were used" to meet the elements of tortious interference with contract. (*Id.*) Additionally, Defendants contend that the allegations of tortious interference with contract are predicated on a finding that there is no non-solicitation agreement between Phan and the Plaintiff. (Mot. to Dismiss at 14–15.) Given that the Court has declined to rule that no non-solicitation agreement exists, Defendants' arguments as to tortious interference of contract must also fail at this stage. Accordingly, the Court declines to dismiss Counts V and VI.

### C. Unjust Enrichment against Lavin and Ankura (VII) and Phan (X)

The Court has previously acknowledged that the breach of contract claim would preclude a successful unjust enrichment claim. (Mem. Op. Aug. 2024 at 16.) *See also Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D. Va. 2013) (explaining that a plaintiff cannot simultaneously succeed on theories of unjust enrichment and breach of contract). Additionally, as the Court has previously stated, Plaintiff may plead a claim in the alternative. *Harrell*, 923 F. Supp. 2d at 827; *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 2011 WL 2938483, at *5 (E.D. Va. July 19, 2011). As the Court found previously, the hiring of Plaintiff's employees, if assumed to be impermissible as Plaintiff claims, may support an unjust enrichment claim. (Mem. Op. Aug. 2024 at 15.) Additionally, Plaintiff has alleged numerous benefits conferred to Defendants by the alleged unjust enrichment, including but not limited to access to

9

proprietary information, confidential information, and trade secrets. (*Id.*) Assuming these facts to be true, these allegations meet the requirements of unjust enrichment that a benefit has been conferred. In turn, Plaintiff has adequately pleaded a claim of unjust enrichment, and the Court declines to dismiss Counts VII and X.

### D. Statutory Conspiracy (I) and Common Law Conspiracy (II)

#### i. Virginia Law

As mentioned above, the Court cannot conclude at this stage that no trade secrets have been misappropriated within Virginia. Likewise, Plaintiff alleges that Defendants engaged in conduct "in and outside of Virginia giving rise to the claims in this action, including by tortiously interfering with Phan's BDO Partner/Principal Employment Agreement, as amended, which is governed by Virginia law," (SAC ¶ 17) and that Ankura "has solicited Virginia residents for employment and employs Virginia residents; has Virginia-based clients; and derives revenue from services it performs for Virginia-based clients." (*Id.* ¶ 11.) Plaintiff states that "Phan hatched a plan to leave BDO and take the Healthcare TAS practice—its employees, clients, and its confidential information and trade secrets lock stock and barrel," actions in which "Ankura and Lavin were willing partners." (*Id.* ¶¶ 3–4.) Additionally, all parties acknowledge Phan's Employment Agreement is governed by Virginia law. (Mot. to Dismiss at 3.)

Plaintiff has clearly stated facts showing that Defendants have a strong connection to Virginia. (SAC ¶ 11.) Assuming the veracity of these factual allegations, it is plausible, if not likely, that Defendants have committed some of the alleged actions in Virginia. Notably, given the large volume of communications and other documents at

10

issue in this case, coupled with the outstanding discovery issues (Pl.'s Resp. at 26 n.9), the Court cannot conclude there is no evidence that Plaintiff's claims took place in Virginia. Indeed, many of the events at issue took place online, and involved two companies with strong connections to Virginia. (SAC ¶¶ 10–12.) At this stage, Plaintiff is not required to assert irrefutable evidence that some of these events took place in Virginia; rather, Defendants are merely required to assert facts which render that conclusion plausible. *Iqbal*, 556 U.S. at 663–64 ("determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). Assuming these facts to be true, the law of the Commonwealth applies at this stage of the pleadings, as some conduct allegedly took place in Virginia, and moreover the forum selection clause stipulates that any claims are to be litigated under Virginia law. (SAC ¶¶ 17–20.)

  Defendants further contend that since Phan is a party to the contract with Plaintiff, he cannot also serve as one of the parties necessary to plead an allegation of conspiracy based on the underlying tortious interference with contract. (Mot. to Dismiss at 26–28.) However, "[t]he common law recognizes a cause of action against those who conspire to induce the breach of a contract, even when one of the alleged conspirators is a party to the contract." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277, 281–82 (1993). Specifically, Virginia's third-party rule recognizes "an action for tort in the nature of a conspiracy" against all parties who "unite" to interfere with a business relationship. *Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192, 199 (1956). The Fourth Circuit has found that this third-party rule provides a cause of action in conspiracy

11

against one who cannot be held directly liable for tortiously interfering with his own business relationship but nonetheless encourages or induces an outsider to do so. *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 91 (4th Cir. 2019). In turn, under Virginia law, Phan could have engaged in a conspiracy with Ankura and Lavin to interfere with his own contract with Plaintiff. Thus, Plaintiff has adequately pleaded a conspiracy claim under Virginia law.

### ii. Tennessee Law

Defendants do not contest that any facts alleged by Plaintiff took place in Tennessee. Rather, Defendants contend that there can be no conspiracy, since there is no underlying tortious interference with contract. (Mot. to Dismiss at 26–28.) This Court has already found that Plaintiff has adequately pleaded tortious interference with contract. Accordingly, we agree with Defendant that Tennessee law can apply to this case. (*Id.* at 13.)

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss with respect to all claims will be DENIED. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Oct. 28, 2025
Richmond, Virginia